[Civ. No. 15333.   First Dist., Div. One.   Dec. 4, 1952.]

MAX P. CHRISTENSEN, Appellant, v. EARL H. TUCKER et al., Respondents.

Bert B. Snyder for Appellant.

Lucas, Wyckoff & Miller for Respondents.

PETERS, P. J.—Plaintiff and defendants own adjoining parcels of real property in East Ben Lomond, in Santa Cruz County. Defendants constructed certain structures that encroached on plaintiff's land. Plaintiff brought this action for a mandatory injunction to compel removal of the encroachments, for damages for their maintenance, and damages for diversion of water onto plaintiff's land caused by the encroachments. Defendants answered, and cross-complained to quiet their title to the area occupied by the encroachments. The court, after finding that the encroachments had been constructed on plaintiff's land, offered the defendants an election: to accept a mandatory injunction to compel them to remove the encroachments and pay $50 damages, or pay $200 damages, accept an injunction against them prohibiting further diversion of water, and secure a decree quieting their title to the fee of the area involved. The defendants elected the second alternative and judgment was entered accordingly. From that judgment plaintiff appeals.

The facts, more in detail, are as follows: Defendants purchased their lot from one Ladagnous June 27, 1938, the lot being approximately 50 feet by 179 feet. The plaintiff purchased his lot, which adjoins to the north that of defendants, from the same grantor, plaintiff's lot being approximately the same size as that of defendants, on March 3, 1943. The south boundary of plaintiff's property is the north boundary of defendants' lot. Both lots front on Manzanita Avenue. Prior to the time plaintiff purchased his lot, defendants constructed a cement abutment along what they thought was the common boundary between the lots from Manzanita Avenue back 125 feet. Actually, this cement abutment was on plaintiff's land. The encroachment, according to the quiet title decree, measured 3 feet on Manzanita Avenue and decreased to 6 inches at the end of 125 feet, so that the encroachment amounted roughly to a long triangle with a 3-foot base, and 125 feet in

length. Although the total area occupied by the encroachments is not fixed in square feet in the findings or the evidence, the parties compute the area as being 229 square feet or about 2½ per cent of plaintiff's total area.

On the cement abutment the defendants constructed a wire fence with steel posts running back from Manzanita Avenue a distance of 77 feet. South of the fence they constructed a driveway about 9 feet wide leading to the garage. The garage is constructed so that its north wall is constructed on the dividing wall. The north wall encroaches onto plaintiff's land from 2.02 feet to 8 inches for a distance of 25 feet. Next, the defendants constructed a badminton court along the dividing boundary, which encroaches from 8 to 6 inches for the 23 feet of its length. Although the evidence is highly confusing on the issue, the trial court found that all of these encroachments, except the garage, were constructed prior to the date plaintiff purchased his lot.

When defendants purchased their lot in 1938 there was an old fence along the north boundary of the lot subsequently purchased by plaintiff, which fence had been constructed in 1905. Defendants were told by Ladagnous that this fence constituted the north boundary of the lot retained by him (and subsequently sold to plaintiff) and that he, Ladagnous, was retaining a 50-foot lot. Defendants accepted this representation and did not have a survey made. This fence was not the north boundary of the lot retained by Ladagnous, but was actually 2 feet north onto the next lot owned by one Paradis. When defendants built the cement wall they measured 50 feet from the Paradis fence and treated that as their north boundary. They fixed the starting point of the wall at a spot on Manzanita Avenue that is 3 feet onto plaintiff's property. Thus, they must have negligently made this measurement because the Paradis fence is only 2 feet off, and the encroachment is 3 feet off. Had they measured accurately, the encroachment would be only 2 feet and there would have been no encroachment at all beyond the garage. There is no explanation in the record as to how this one-foot error occurred.

As already pointed out, plaintiff purchased his lot in 1943 from Ladagnous. At that time the cement curb, according to the findings, had been constructed. Plaintiff testified that about the time he purchased, and while defendants were working along the dividing boundary, he complained to defendants that he believed his frontage on Manzanita Avenue was not a full 50 feet. He also testified that he did not have

a survey made because it was impracticable to secure a surveyor during the war. Mr. Tucker, one of the defendants, admitted that such complaint had been made to him in 1943.

The plaintiff paid $250 to Ladagnous as the full purchase price of his lot.

There is no evidence that the encroachment adversely affects any existing use of the land by plaintiff. The plaintiff's property is unimproved except for a garage which is unaffected by the encroachments, and there is no evidence that the encroachments adversely affect the use of this garage. Plaintiff does claim that the encroachments will interfere with his plans for the future development of the property, but there is no evidence of what those plans may be, or how the encroachments may interfere with them. Plaintiff did testify to some damage caused by defendants running a drain pipe so that water and sand were brought onto plaintiff's property, and the sand piled up against the garage, rotting some of the siding and requiring it to be replaced. Apparently, although this is not clear, it is for this damage that the $50 damages allowed in the first alternative form of judgment were granted. However, the judgment enjoins defendants from any further such diversions, and plaintiff, of course, makes no complaint concerning that portion of the judgment. Defendants have not appealed.

The monetary damage that defendants would suffer if compelled to remove the encroachments is not shown by the evidence. Obviously, in such event, they would be compelled to remove the concrete curbing for a distance of 125 feet. The cost of such removal does not appear in the evidence. They would also be compelled to remove a portion of their driveway which extends for the first 77 feet of the encroachment. Defendants claim that if their driveway is thus narrowed it will make it unusable, but this contention is not supported by the evidence. Since the dispute arose between the parties, plaintiff has constructed a fence along the true boundary line between the respective properties. Although this has narrowed the driveway, an automobile can get through, although with difficulty. Moreover, a driveway could be constructed by defendants on the south side of their house where there would be a 9-foot clearance. It should be mentioned that defendants also own the lot to the south which adjoins the lot on which their house is built, and this adjoining lot is unimproved.

Defendants, if an injunction were granted, would also have to remove the north wall of their garage which extends 25 feet along the encroaching curb. This would, undoubtedly, be a material inconvenience and would entail some expense, but the estimated amount thereof does not appear in the evidence. The last 23 feet of the encroachment, if removed, would shorten defendants' badminton court from 6 to 8 inches, which would not be a major inconvenience or cost.

On this evidence the court found that all of the improvements, except the superstructure of the garage, were built before plaintiff purchased his property; that when defendants purchased their lot they were informed by Ladagnous, their grantor, that the Paradis fence constituted the north boundary of the lot retained by him; that when the curbing was constructed, Ladagnous still owned the lot now owned by plaintiff; that while the curbing was being constructed Ladagnous was present and acquiesced in the construction; that while the fence was being constructed, after plaintiff had purchased his lot, plaintiff observed what was being done and acquiesced therein; that nevertheless "defendants were negligent in relying and acting upon the representations and acquiescence of J. P. Ladagnous and the acquiescence of plaintiff . . ., and in not obtaining a survey prior to the construction of said improvements."

The court then found that the area encroached upon was sandy, unproductive, and of "little value," and that the damage to plaintiff did not exceed $50; that it would be "inequitable to compel defendants to remove said encroaching improvements, the value of which exceeds by far the value of the land occupied by said improvements; that plaintiff's proposed use of his said land is for residential purposes and that such use will not be seriously impaired if title to the land occupied by said improvements shall be quieted in favor of defendants." The court then found that $200 would cover all damages, and offered the defendants the option of paying $50 damages and allowing plaintiff a mandatory injunction, or of paying $200 damages, having the mandatory injunction denied except that the water diversion would be enjoined, and defendants' title in fee would be quieted to the area in dispute. Defendants elected the second alternative, and judgment was entered accordingly.

Before discussing the law applicable to this appeal, comment should be made about three major portions of the judgment. First, the judgment not only denies to plaintiff the

equitable relief requested by him, but grants to defendants affirmative relief, by quieting title in fee in defendants to land admittedly owned by plaintiff. In the second place, this form of equitable condemnation was granted to private persons even though the trial court found that the defendants were negligent in the construction of the encroachments. In the third place, this relief was granted to defendants on the theory of "balancing the equities," although there is no finding or evidence of what it would cost defendants to remove the encroachments.

There are many cases in California and elsewhere discussing the question as to whether, where a trespass is shown, the trial court has any legal right to deny a mandatory injunction. The cases are in hopeless conflict. There is substantial authority to the effect that the trial court has no discretion in such cases, may not balance the conveniences, or more accurately the hardships, between the parties, and must grant the injunction compelling the removal of the encroachment regardless of the fact that the relative hardship and expense to defendants far outweighs the inconvenience to plaintiff caused by the continuance of the encroachments, except where the trespass is so minor as to fall within the rule of *de minimis*. (*Bemmerly* v. *County of Lake,* 55 Cal.App.2d 829 [132 P.2d 249] ; *Felsenthal* v. *Warring,* 40 Cal.App. 119 [180 P. 67] ; *Morris* v. *George,* 57 Cal.App.2d 665 [135 P.2d 195] ; *Case* v. *Sisich,* 97 Cal.App. 106 [275 P. 492].) *Phillips* v. *Isham,* 111 Cal.App.2d 537 [244 P.2d 716], is the most recent case adopting this theory. In that case the appellate court held that the trial court had erred in permitting the defendant to pay $250 damages to plaintiff as a condition for the denial of a mandatory injunction where a garage encroached 2 feet and a carport 4 feet plus on a 50-foot lot. The carport was unusable if the encroachment were removed. The appellate court gave lip service to the rule that the trial court has some discretionary power in such cases, but held that such discretion only exists where the encroachment is "trivial."

However, the numerical weight of authority in this state recognizes the rule that, where the encroachment does not irreparably injure the plaintiff, was innocently made, and where the cost of removal would be great compared to the inconvenience caused plaintiff by the continuance of the encroachment, the equity court may, in its discretion, deny the injunction and compel the plaintiff to accept damages.

Of course, the practical effect of such a rule is to give the defendant, a private person, in certain circumstances, what is, in effect, the right of eminent domain by permitting him to occupy property owned by another. The rule is frequently justified on purely practical grounds because where expensive structures have been constructed that overhang adjoining property or trespass to a minor degree, if the injunction to remove them were granted as of right, the plaintiff would be encouraged to engage in what amounts to legal extortion. Thus in *Ukhtomski* v. *Tioga Mutual Water Co.*, 12 Cal.App. 2d 726 [55 P.2d 1251], which involved an encroachment of 15/100 acre on land worth $150 an acre, and where the encroaching reservoir cost $7,000 to construct, served 500 people, and where damages of $762.41 were allowed, the appellate court affirmed a denial of a mandatory injunction, emphasizing the serious harm to defendant if the injunction were granted, the defendant's inadvertence and innocent mistake in constructing the reservoir, the fully compensatory nature of the damages, and the serious injury to the public if the reservoir were ordered removed. In *Rothaermel* v. *Amerige*, 55 Cal.App. 273 [203 P. 833], defendant's building encroached 1½ inches, there was a long delay in bringing the action, and the damages to plaintiff were minimal. The trial court granted the injunction and this was reversed, the court clearly adopting the balancing of equities doctrine. In *Blackfield* v. *Thomas Allec Corp.*, 128 Cal.App. 348 [17 P.2d 165], a two-story building had a wall which overhung plaintiff's property 3⅝ inches, causing $200 in damages, and which would cost $6,875 to remove. The appellate court affirmed the denial of a mandatory injunction, adopting the rule that such an injunction will not be granted when it will operate oppressively, where the encroachment is trifling, the result of an innocent mistake, and where the damage caused to defendant by removal would be greatly disproportionate to the damage caused plaintiff by its continuance. In *McKean* v. *Alliance Land Co.*, 200 Cal. 396 [253 P. 134], where a garage building encroached ½ to ⅝ of an inch onto plaintiff's land and caused but $10 damage at most, the Supreme Court affirmed a denial of the injunction. The court cited, with approval, the case of *Rothaermel* v. *Amerige, supra,* and approved the rule that the court will not grant a mandatory injunction ''where the injury is so slight as to bring it within the maxim *de minimis,* or full compensation can be made in damages. If there is an adequate remedy at law, no relief will be granted, especially

where there is no appreciable damage, and its issuance would require the performance of an act which would be difficult, and involve considerable expense." (P. 399.)

In *Nebel* v. *Guyer,* 99 Cal.App.2d 30 [221 P.2d 337], there was an encroachment of 2 plus feet caused by the wall of a building and overhanging eaves. The denial of a mandatory injunction was affirmed, the court emphasizing the great expense that would be entailed in making the removal, and the fact the area encroached upon was being used only as a flower garden. The court, in effect, found that there was no actual damage, and stated the rule as follows (p. 33) : "The rule was early recognized that where the encroachment is slight, the cost of removal will be great and the corresponding benefit to the adjoining owner small, or compensation in damages can be had, a court will ordinarily decline to compel removal, and will leave the complaining party to his remedy at law. See 1 Corpus Juris 1209."

In *Wright* v. *Best,* 19 Cal.2d 368 [121 P.2d 702], a water pollution nuisance case, the Supreme Court held that the injunction should have been issued because the plaintiff had not proved the facts upon which the balancing hardships doctrine could be predicated, but in so holding recognized the existence of such doctrine, using the following language (p. 386) : "But the respondent asserts a right to pollute the creek from the entire Ruby Mine, relying upon the equitable doctrine of the 'balancing of the conveniences.' Under this doctrine, a court of equity may deny injunctive relief and relegate the plaintiff to his remedy at law, if the benefit resulting to him from the granting of the injunction will be slight as compared to the injury caused the defendant thereby. [Citing cases.] Despite a proper showing in other respects of a right to injunctive aid, if a plaintiff is merely seeking to protect a technical and unsubstantial right, and the issuance of the injunction will bring no actual advantage, it may be properly refused where to do otherwise would result in unusual hardship to the defendant or the public."

In *Baldocchi* v. *Four Fifty Sutter Corp.,* 129 Cal.App. 383 [18 P.2d 682], the court affirmed the denial of a mandatory injunction where 4 feet of a back alley had been taken as a driveway for a garage. The opinion contains considerable language critical of the balancing doctrine, stated that the courts "frown upon the doctrine," but applied it to the case under discussion because the plaintiff, to be entitled

to a mandatory injunction, must show "substantial injury" that had to be "real and ascertainable as distinguished from fanciful and imaginary." (P. 393.) (See, also, *Mertens* v. *Berendsen*, 213 Cal. 111 [1 P.2d 440].)

Most of the legal writers approve the concept that some such concept as balancing conveniences or hardships in connection with the granting or denying of mandatory injunctions in trespass cases should exist, but most recommend that it should not be applied where a substantial right of the plaintiff is involved and unless the disproportionate hardship between the plaintiff and defendant is very great, and unless the encroachment was an innocent one. (See, generally, Walsh on Equity, § 55, p. 284 et seq.; de Funiak, Handbook of Modern Equity, § 22, p. 48 et seq.; 5 Pomeroy, Equity Jurisprudence (2d ed.), § 1966, p. 4467 et seq.; McClintock, *Discretion to Deny Injunction Against Trespass and Nuisance*, 12 Minn.L.Rev. 565; note, 25 Cal.L.Rev. 245.)

Section 941 of the Restatement of Torts reads as follows: "The relative hardship likely to result to the defendant if injunction is granted and to the plaintiff if it is denied, is one of the factors to be considered in determining the appropriateness of an injunction against tort." There are several comments by the authors following this section in which it is pointed out that simply because a tort has been committed, and plaintiff has proved that other remedies will not make him whole, an injunction should not issue as of course. It is recommended that the test should be "relative hardship" rather than "balance of convenience." In Comment "b" it is pointed out that, in such cases, the defendant is the wrongdoer and it is his actions that have caused the situation. This is a factor that should be weighed against him. If the plaintiff is partly responsible, such as where he acquiesces and unduly delays, that is a factor that should be weighed against him. This comment also suggests that the defendant's good or bad faith is a factor to be considered.

It is our view that the better reasoned cases hold that in encroachment cases the trier of the fact possesses some discretion in determining whether to grant or to deny the mandatory injunction. In exercising that discretion, and in weighing the relative hardships, the court should consider various factors. It starts with the premise that defendant is a wrongdoer, and that plaintiff's property has been occupied.

Thus, doubtful cases should be decided in favor of the plaintiff. In order to deny the injunction, certain

factors must be present: 1. Defendant must be innocent—the encroachment must not be the result of defendant's willful act, and perhaps not the result of defendant's negligence. In this same connection the court should weigh plaintiff's conduct to ascertain if he is in any way responsible for the situation. 2. If plaintiff will suffer irreparable injury by the encroachment, the injunction should be granted regardless of the injury to defendant, except, perhaps, where the rights of the public will be adversely affected. 3. The hardship to defendant by the granting of the injunction must be greatly disproportionate to the hardship caused plaintiff by the continuance of the encroachment and this fact must clearly appear in the evidence and must be proved by the defendant. But where these factors exist, the injunction should be denied, otherwise, the court would lend itself to what practically amounts to extortion.

Now how do these rules apply to the facts of the instant case? In the first place, it should be noted that the trial court not only denied the injunction, but also granted defendants affirmative relief by quieting their title in fee to the disputed strip. While undoubtedly the trial court, where it grants damages in lieu of an injunction may protect the defendant by granting to him affirmative relief (*Ukhtomski* v. *Tioga Mutual Water Co.*, 12 Cal.App.2d 726, 729 [55 P.2d 1251]), the affirmative relief granted should not be greater than is reasonably necessary to protect defendant. In the instant case defendants would have been fully protected by the grant of an easement, and the decree should have gone no further. Under any theory, if defendants should ever abandon the encroachments, the easement should terminate. To quiet title to the fee was error.

There is another material defect in the judgment. The judgment is predicated on a finding that in building the encroachments the defendants were negligent. The court first finds acquiescence by plaintiff, and acquiescence and representations by the former owner of plaintiff's lot, but then finds that defendants were negligent in relying upon such acquiescence and representations without securing a survey. The California cases have clearly held that for a defendant to be entitled to the benefits of the relative hardship doctrine, the trespass must not have been willful, and imply that he must not have been negligent. Thus, in *Ukhtomski* v. *Tioga Mutual Water Co.*, 12 Cal.App.2d 726 [55 P.2d 1251], it is stated

that the trespass must be the result of "inadvertence and mistake"; in *Blackfield* v. *Thomas Allec Corp.*, 128 Cal.App. 348, 350 [17 P.2d 165], the words "innocent mistake" are used; in *Morgan* v. *Veach*, 59 Cal.App.2d 682, 690 [139 P.2d 976], the language is "innocent mistake or oversight"; while in the case of *Felsenthal* v. *Warring*, 40 Cal.App. 119, 128 [180 P. 67], the court states that the trespass must be the result of an "innocent mistake of fact" or there must be a "*bona fide* claim of right." In *Agmar* v. *Solomon*, 87 Cal. App. 127, 142 [261 P. 1029], the court stated: "In the present case the court may well have concluded, and the granting of injunctive relief evidences that it did conclude, that the encroachment upon the land of respondents was not the result of accident or mistake, but was placed there with knowledge of respondent's claim of ownership—that Koenig had actual knowledge of such claim, or if he did not have actual knowledge, by the exercise of ordinary diligence he would have acquired such knowledge."

The only case we have found directly discussing the effect of defendant's negligence on the application of the doctrine is *Kershishian* v. *Johnson*, 210 Mass. 135 [96 N.E. 56, 36 L.R.A. N.S. 402]. There an owner built the encroachment after knowledge of plaintiff's claim. The court held that he was negligent in not having a survey made under such circumstances, and that such negligence barred him from invoking the balancing doctrine as a defense to the application for a mandatory injunction.

█ It would appear that if a defendant is negligent, and such negligence is the sole proximate cause of the encroachment, such defendant should be barred from invoking the doctrine. But where plaintiff's conduct also contributes to the situation, then the trier of the fact is entitled to weigh the hardships each may suffer, and the negligence of one against the other. The trial court made no findings on this basic issue. Moreover, the evidence on the issue is not satisfactory. Undoubtedly, the Paradis fence was in existence when defendants purchased their lot. Undoubtedly, Ladagnous, the grantor, told defendants that the Paradis fence constituted the north boundary of the lot retained by him and now owned by plaintiff. Defendants had no survey made but claim to have measured from the Paradis fence when they constructed the cement wall. But admittedly the cement wall constructed by defendants projects 3 feet onto plaintiff's land in front of the lot. The Paradis fence was only off 2 feet. The court

also found (and the evidence on this issue is most confused) that the cement wall was built before plaintiff purchased his lot from Ladagnous in 1943. Plaintiff therefore knew of the wall when he purchased. Plaintiff made a mild objection to defendants but had no survey made until 1948, claiming that it was impracticable to secure a surveyor during the war. He did not bring this action until September of 1949. These matters should all be inquired into more fully on the retrial, and more complete findings made on the issues as indicated by this opinion.

The evidence is also unsatisfactory on the question as to the hardship that would be suffered by defendants if compelled to remove the encroachments. There is no evidence at all as to the estimated costs of removing the encroachments. There is evidence that the driveway, which constitutes the first 77 feet of the encroachment, is usable if the encroachment were to be removed. There is evidence that even if the present driveway cannot be used, there are other means of access to the garage possessed by defendants. Obviously, defendants would suffer no material damage (except the cost of removal) by being compelled to remove the encroachment on the badminton court which constitutes the last 25 feet of the encroachment. There would seem to be no reason why at least as to that portion of the encroachment the injunction should not be granted.

It is quite clear that the judgment as it stands is not supported by the findings. Findings were not made on material issues. Justice requires that this case be retried on all issues in accordance with the rules of law announced in this opinion.

The judgment appealed from is reversed.

Bray, J., and Wood (Fred B.), J., concurred.