[No. D044294. Fourth Dist., Div. One. May 25, 2005.]

WOODRIDGE ESCONDIDO PROPERTY OWNERS ASSOCIATION, Plaintiff and Respondent, v. PAUL NIELSEN, Defendant and Appellant.

560

## COUNSEL

Joseph J. Rego for Defendant and Appellant.

Feist, Vetter, Knauf and Loy, Alan H. Burson and Lisa Frazee Morgosh for Plaintiff and Respondent.

## OPINION

**NARES, Acting P. J.**—This case involves a dispute between a homeowners association and a homeowner regarding the construction of a wooden deck over an easement. Plaintiff Woodridge Escondido Property Owners Association (association) managed a planned residential development known as Woodridge in Escondido. Defendant Paul Nielsen owned a home in Woodridge and had a side yard easement over the adjoining property of his

neighbor, Virginia Kendall. The declaration of covenants, conditions and restrictions (CC&R's) expressly prohibited the installation of "any *permanent* structure other than irrigation systems" on the easement. (Italics added.) After he received permission from Woodridge's architectural committee, Nielsen constructed a wooden deck that encroached upon the easement. The association's board of directors later found that the architectural committee had erroneously approved the construction of the deck, ordered Nielsen to remove the portion of the deck that encroached upon the easement, and offered to pay for the removal cost.[1] Nielsen refused the offer. The association brought this action for injunctive and declaratory relief against him, seeking an order requiring him to remove the encroaching portion of the deck. The association also recorded a notice of pendency of action (lis pendens).[2]

The court granted the association's motion for summary judgment and its motion for attorney fees. After the court issued an order granting Nielsen's motion to expunge the lis pendens, the association petitioned for writ relief (*Woodridge Escondido Property Owners Assn. v. Superior Court (Nielsen)* (Apr. 26, 2004, D043860) [nonpub. opn.] (*Woodridge Escondido*)). This court granted the petition and issued a peremptory writ directing the court to vacate that order and enter an order denying Nielsen's motion.

Nielsen appeals the summary judgment and the order granting the association's motion for attorney fees. Nielsen also purports to appeal from the order granting his motion to expunge the lis pendens, and he requests "review" of this court's writ decision. For reasons we shall explain, we affirm the summary judgment and award of attorney fees in favor of the association and conclude that we have no authority to either reach the merits of Nielsen's purported appeal of the expungement order or review this court's final writ decision.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

The homes in the Woodridge Escondido development (development) are a type known as "zero lot line." One exterior side wall of each home is built on one of the side yard property lines of the lot on which the home is located

---

[1] According to the parties on appeal, the portion of the deck that encroached upon the easement has been removed.

[2] " 'A lis pendens is a recorded document giving constructive notice that an action has been filed affecting title to or right to possession of the real property described in the notice.' [Citation.]" (*Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 647 [15 Cal.Rptr.3d 805, 93 P.3d 395].)

[3] The following background is based primarily on the facts that the parties acknowledge are undisputed, and this court's prior opinion in this matter (*Woodridge Escondido, supra,* D043860), discussed, *post.*

(the lot on which the home is located is sometimes referred to as the dominant tenement). Each lot has a five-foot easement over the side yard of the adjacent lot that belongs in fee to the owner of that neighboring lot (which is sometimes referred to as the servient tenement).

### A. CC&R's

Article IV (Architectural Control) of the subject CC&R's requires written approval of all "structure[s] or improvement[s]" to be built or installed on any lot in the development, and provides: "No building, fence, wall, patio, patio cover or *other structure or improvement* . . . shall be commenced, erected, placed, installed or altered upon any Lot until the location and the complete plans and specifications . . . have been submitted to and *approved in writing* as to . . . location to surrounding structures . . . *by the Board, or by the architectural committee composed of at least three . . . and not more than [five] representatives from the membership of the Association appointed by and serving at the pleasure of the Board.* All or any number of the members of the architectural committee may be members of the Board. In the event no architectural committee is named, the Board shall serve as the architectural committee. . . ." (Italics added.)

Article X, section 1, which pertains to the enforcement of the CC&R's, declares that a violation of the CC&R's is a nuisance for which the association and "any owner" may seek a remedy: "The Association and any owner shall have the right to enforce, by any proceedings at law or in equity, all restrictions, conditions, covenants and reservations now or hereafter imposed by the provisions of [these CC&R's]. . . . The result of every act or omission whereby any convenant contained in [these CC&R's] is violated in whole or in part is hereby declared to be a *nuisance*, and every remedy against nuisance, either public or private, shall be applicable against every such act or omission. . . ." (Italics added.)

Article X, section 8(c), which is of central importance in this appeal, limits use of side yard easements in the development and prohibits the owners of dominant tenements from installing "any permanent structure other than irrigation systems" on appurtenant side yard easements.

Article X, section 9 (Litigation) of the CC&R's contains an attorney fees provision that authorizes the prevailing party in litigation commenced by the association or any homeowner to recover costs of suit and reasonable attorney fees.

### B. *Nielsen's Lot and Deed Restrictions*

Nielsen owns lot 64 in the development. Lot 64 is subject to the CC&R's and is located at 2234 Hilton Head Glen in the City of Escondido. The deed transferring title of the property to Nielsen (deed) described the "easement appurtenant to lot 64 on, over and across that portion of" the neighboring lot (lot 63) and, like article X, section 8(c) of the CC&R's, prohibited Nielsen from using the easement for the installation of "any permanent structure other than irrigation systems": "The owner of Lot 64 may use the easement granted herein for access, recreation and landscaping (including irrigation systems) purposes only and *shall not use the easement* in violation of any law or *for the installation* or maintenance *of any permanent structure, other than irrigation systems . . . .*" (Italics added.)

### C. *Nielsen's Deck and Hot Tub*[4]

Nielsen built a 17- by 21-foot deck with a full-size hot tub that extended into the five-foot-wide side yard easement over the adjacent side yard of the neighboring lot (lot 63) owned by Virginia Kendall.[5] Two members of the architectural committee had approved Nielsen's architectural approval request form pertaining to the deck.

The Board later found that the architectural committee had erroneously approved the construction of the deck, decided that the deck should be removed, and offered to pay Nielsen for the removal cost.[6]

### D. *Association's Complaint and Lis Pendens*

In April 2003 the association filed a complaint for injunctive and declaratory relief against Nielsen to enforce the CC&R's and the provisions of the

---

[4] Nielsen asserts on appeal that he "recently removed the portion of the deck that extend[ed] over the [five-foot] easement," and thus "[t]he allegation regarding the removal of a portion of the deck that encroach[ed] over the easement is no longer an issue."

[5] Kendall, who is not a party to this appeal, states in her declaration supporting the association's summary judgment motion that Nielsen's deck was built "over the easement on [her] property," and it "abut[ted] [her] house." In his written opposition to that motion, Nielsen did not dispute that he constructed the deck over the side yard easement on Kendall's property, but he disputed that the deck was a "permanent structure" and that it abutted Kendall's house.

[6] As shown by its October 15, 2002 minutes, the board made the following determination: "That [homeowner] Nielsen remove the 5[-foot] encroachment on property owned by Kendall at 2230 [Hilton Head Glen], with [a]ssociation to pay for the cost of removal, due to fact the Architectural Committee erred in giving approval. Work to be completed in 60 days. Board felt allowing encroachment would set a very harmful precedent."

deed pertaining to the easement. In the prayer of the complaint, the association sought a declaration of the parties' rights and obligations under the CC&R's, and an order requiring Nielsen to remove the portion of the deck that was encroaching on the subject easement. The association also recorded and served on Nielsen a notice of pendency of action (lis pendens).

### E. *Association's Motion for Summary Judgment and Nielsen's Motion to Expunge Lis Pendens*

The association filed a motion for summary judgment. Nielsen filed a motion to expunge the lis pendens. After hearing argument, the court issued an order granting summary judgment for the association. The court found "no triable issue as to whether [Nielsen] violated the CC&Rs by constructing a *permanent structure* on the easement." (Italics added.) The court also found as a matter of law that "the deck constitute[d] a *permanent structure* within the meaning of the CC&Rs." (Italics added.) Furthermore, the court found that to the extent Nielsen raised the relative hardship doctrine in opposing summary judgment, "no evidence has been submitted in support of the application of this doctrine."

The court also issued an order granting Nielsen's motion to expunge the lis pendens. In expunging the lis pendens, the court confirmed its earlier tentative ruling that provided in part: "The court finds that the [association's] complaint *failed to state a real property claim* as defined in [Code of Civil Procedure[7]] section 405.4.[8] Although the complaint alleges that [Nielsen's] deck encroaches upon an easement, the court finds that the complaint does not affect possession of real property since a judgment in favor of [the association] will merely require removal of personal property, to wit, the deck." (Italics added.)

### F. *This Court's Writ Directing the Court to Vacate Its Order Expunging the Lis Pendens (D043860), and the Supreme Court's Rejection of Nielsen's Petition for Review*

The association filed a writ petition in this court (*Woodridge Escondido, supra*, D043860) challenging the expungement of the lis pendens on the grounds that the definition of "real property claim" in section 405.4 (see fn. 8, *ante*)

---

[7] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

[8] Section 405.4 defines the term "real property claim" as "the cause or causes of action in a pleading which would, if meritorious, affect (a) title to, or the right to possession of, specific real property or (b) the *use of an easement identified in the pleading*, other than an easement obtained pursuant to statute by any regulated public utility." (Italics added.)

included "the use of an easement identified in the pleading" and that in the summary judgment proceeding the association had established the probable validity of its claim against Nielsen.

In an unpublished opinion filed in April 2004 (*Woodridge Escondido, supra,* D043860), this court concluded that the association was entitled to writ relief because it had asserted a "real property claim" against Nielsen within the meaning of section 405.4 by filing a complaint for declaratory and injunctive relief alleging that Nielsen violated the CC&R's by constructing a deck in the restricted area of the side yard easement. This court reasoned that "[w]hether or not the deck [was] labeled personal property, a fixture or anything else, the association's claim against Nielsen [was] for his use (misuse) of the side yard easement." This court ordered the issuance of a writ directing the court to vacate its order granting the expungement, enter a new order denying Nielsen's motion to expunge the lis pendens, and entertain any motion for reasonable attorney fees and costs the association might bring pursuant to section 405.38. In July 2004, the superior court issued an order vacating the order granting Nielsen's motion to expunge the lis pendens and entered a new order denying that motion.

### G. *Attorney Fees Award, Judgment, and Appeal*

As the prevailing party on its action to enforce the CC&R's, the association brought a motion for attorney fees, which Nielsen opposed. The court issued an order (the attorney fees order) granting the motion and awarding reasonable attorney fees to the association in the amount of $9,672.35. The award did not include attorney fees incurred by the association in the writ petition proceeding in this court (*Woodridge Escondido, supra,* D043860, discussed, *ante*).

On March 25, 2004, the court entered judgment in favor of the association. Nielsen's timely appeal from the judgment and attorney fees order followed.

## DISCUSSION

### A. *Summary Judgment*

We first address Nielsen's appeal of the summary judgment entered in favor of the association.

### 1. *Background and Nielsen's contentions*

In granting summary judgment in favor of the association, the court found no triable issue of material fact as to whether Nielsen violated the CC&R's by constructing a permanent structure on the side yard easement on Kendall's

property. The court also found that the deck was a permanent structure within the meaning of the CC&R's as a matter of law and that, to the extent Nielsen raised the relative hardship doctrine (discussed, *post*) in opposing summary judgment, he had submitted no evidence in support of the application of that doctrine.

Nielsen does not dispute that his deck extended over the side yard easement on Kendall's property. He contends the summary judgment should be reversed because (1) there is no evidence to show the deck was a permanent structure within the meaning of the CC&R's; (2) there are triable issues of material fact as to whether the deck was a permanent structure in violation of article X, section 8(c) of the CC&R's, and whether the hot tub motor caused any vibration in Kendall's house; (3) there are also triable issues of material fact as to whether he was required to seek approval by a three-member panel of the architectural committee, whether "the Board [*sic*][9] erroneously approved [his] request [to build the deck]," whether his architectural approval request form was erroneously approved by the architectural committee, and whether that form was incomplete; (4) the association "act[ed] in an arbitrary manner by directing [him] to remove the deck extending over the easement, soon after his application was approved"; (5) the association's claim that Nielsen's hot tub caused a nuisance on Kendall's property is based on insufficient evidence; (6) the relative hardship doctrine should be applied because there is nothing to show that the association, in bringing this action for injunctive and declaratory relief "based on a breach of the CC&Rs and the deck and hot tub causing a nuisance to [Kendall's] residence," has been irreparably damaged; and (7) the association denied Nielsen's right to a hearing before the board of directors approved a motion requesting him to remove the portion of the deck that extended over the easement.

2. *Standard of review*

■ On an appeal from a grant of summary judgment, we independently examine the record to determine whether triable issues of material fact exist. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) "In performing our de novo review, we must

---

[9] The record shows that the architectural committee, not the Board, approved Nielsen's request to build the deck, and the Board later overruled that approval and directed Nielsen to remove the encroaching portion of the deck. In support of his contention that the *Board* approved the deck, Nielsen relies on article IV of the CC&R's, which provides in part that "[i]n *the event no architectural committee is named,* the Board shall serve as the architectural committee." (Italics added.) Nielsen fails to cite any evidence in the record showing that no architectural committee was named in this matter.

view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [his] evidentiary submission while strictly scrutinizing [the prevailing party's] own showing, and resolving any evidentiary doubts or ambiguities in [favor of the losing party]." (*Id.* at p. 768.)

■ "[T]he party moving for summary judgment [(here the association)] bears the burden of persuasion that there is no triable issue of material fact and that [it] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*), fn. omitted.) "[A] plaintiff bears the burden of persuasion that 'each element of' the 'cause of action' in question has been 'proved,' and hence that 'there is no defense' thereto. (Code Civ. Proc., § 437c, subd. (*o*)(1).)" (*Aguilar, supra,* 25 Cal.4th at p. 850.)

If the moving plaintiff meets its initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact, the burden shifts to the defendant (here Nielsen) "to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar, supra,* 25 Cal.4th at p. 850.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Ibid.*, fn. omitted.)

### 3. *Analysis*

■ The key factual issue in this case is whether Nielsen's deck, which encroached upon the side yard easement on Kendall's property, violated the provisions of article X, section 8(c) of the CC&R's because it was a permanent structure prohibited by those provisions. For reasons we now discuss, we conclude the association met its initial burden of production to demonstrate that the deck was a permanent structure, and thus met its burden to make a prima facie showing of the nonexistence of any triable issue of material fact.

In support of its summary judgment motion, the association presented to the court a copy of the CC&R's. The plain language of article X, section 8(c) of the CC&R's limits use of the side yard easements in the development, including Nielsen's easement on Kendall's property over which he built his deck, and it prohibits the owners of dominant tenements (including Nielsen) from installing "any permanent structure other than irrigation systems" on the appurtenant side yard easements. That section provides: "Each side yard easement may be used by the Owner(s) of the Dominant Tenement to which

it is appurtenant for access, landscaping (including irrigation systems) and recreational purposes only. *The Owner(s) of the Dominant Tenement shall not use the appurtenant side yard easement* in violation of any law or *for the installation* or maintenance *of any permanent structure other than irrigation systems. . . .*" (Italics added.)

The association also submitted authenticated photocopies of color photographs showing the location and construction details of the deck that abutted the house of Nielsen's neighbor, Kendall (the owner of the servient tenement), as well as a declaration by Kendall, who described the deck as "a wooden deck structure [constructed] over the easement on my property which abuts my house and completely covers the drainage culvert established by the builder." Kendall also stated in her declaration that "the legs of the deck are buried into the ground and it is attached to his house."

■ Nielsen challenges Kendall's declaration, claiming that it "is nothing more than hearsay because she was not a party to the action against [him]." This claim is unavailing. Section 437c, subdivision (b)(5) provides that evidentiary objections not made at the hearing on a summary judgment motion "shall be deemed waived." Here, Nielsen asserted his hearsay objection to Kendall's declaration in his written response to the association's separate statement of undisputed material facts. However, a mere objection is insufficient. To preserve an evidentiary objection for appellate review, the objecting party must also obtain a ruling on the objection from the trial court. (*Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1186, fn. 1 [91 Cal.Rptr.2d 35, 989 P.2d 121] [evidentiary objections deemed waived because "the record contain[ed] no rulings on those objections"], disapproved on another point in *Aguilar, supra,* 25 Cal.4th at p. 853, fn. 19.) Here, Nielsen has failed to show that the court ruled on his hearsay objection to Kendall's declaration, and our review of the record discloses no such ruling. Accordingly, we deem Nielsen's evidentiary objection waived and view Kendall's declaration as having been admitted in evidence as part of the record for purposes of this appeal. (*Sharon P. v. Arman, Ltd., supra,* at p. 1186, fn. 1.)

We reject Nielsen's contention that there is "no evidence to demonstrate the deck [was] a permanent fixture." Neither the CC&R's nor Nielsen's grant deed[10] defines the term "permanent fixture." The Oxford English Dictionary

---

[10] The grant deed, like article X, section 8(c) of the CC&R's, prohibited Nielsen from using the appurtenant side yard easement on Kendall's property for the installation of "any permanent structure, other than irrigation systems."

Online (OED Online), however, defines "permanent" as "[c]ontinuing or designed to continue indefinitely without change; abiding, lasting, enduring; persistent."[11]

Here, the association's photographic evidence and Kendall's declaration establish that because Nielsen's deck was attached to his house and its supporting legs or posts were buried in the ground, it was "designed to continue indefinitely without change" and was constructed to last or endure. Nielsen's contention that the deck was not permanent because it could be (and has been) removed, is unavailing. As already noted, article X, section 8(c) of the CC&R's prohibits the owner of a dominant tenement (in this case, Nielsen) from constructing any permanent structure "other than irrigation systems" over an appurtenant side yard easement. The plain language of that section shows that for purposes of enforcing the CC&R's, "permanent" and "removable" are not mutually exclusive terms. Although irrigation pipes and fixtures, like a deck, can be removed from an easement, they (like a deck) are designed to continue indefinitely without change, and thus are no less "permanent" than a deck. Article X, section 8(c) of the CC&R's, however, like Nielsen's grant deed, provides an exception permitting the construction of such permanent irrigation systems on appurtenant side yard easements.

We thus conclude that the association met its burden of producing evidence showing that the deck was permanent within the meaning of article X, section 8(c) of the CC&R's. Accordingly, we also conclude that the association met its burden of showing that Nielsen's deck was a prohibited permanent structure that encroached upon the appurtenant side yard easement on Kendall's property in violation of that section of the CC&R's.

Because the association met its burden of producing evidence showing that Nielsen's construction of the deck on the easement on Kendall's property was a violation of the CC&R's, we further conclude it also met its burden of producing evidence showing that the encroaching portion of the deck was a nuisance within the meaning of article X, section 1 of the CC&R's, which provides in part that "[t]he result of every act or omission whereby any convenant contained in [these CC&R's] is violated in whole or in part is hereby declared to be a *nuisance*" (italics added), and "every remedy against nuisance, either public or private, shall be applicable against every such act or omission. . . ." That section also expressly authorizes the

---

[11] OED Online (2d ed. 1989) <http://dictionary.oed.com/cgi/entry/50175860?> (as of Apr. 2005).

association to enforce the CC&R's "by any proceedings at law or in equity." In sum, the association met its initial burden of producing evidence showing prima facie entitlement to the injunctive and declaratory relief for which it prayed in its complaint against Nielsen.[12]

Because the association met its initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact, the burden shifted to Nielsen to make a prima facie showing of the existence of such an issue. (*Aguilar, supra,* 25 Cal.4th at p. 850.) In support of his written opposition to the summary judgment motion, Nielsen submitted his own declaration, which he cited several times in his written response to the association's separate statement of undisputed material facts. In its order granting the summary judgment motion, however, the court found that Nielsen's declaration failed to comply with section 2015.5,[13] and ruled that it was inadmissible.[14] On appeal, Nielsen does not contend the court erred in excluding his declaration.

Because Nielsen's excluded declaration was the purported evidence that he offered to show the existence of a triable issue of material fact, we conclude

---

[12] Noting that he recently removed the portion of the deck that encroached upon the easement on Kendall's property, Nielsen asserts that "[t]he [association's] allegation regarding the removal of a portion of the deck that encroache[d] over the easement is no longer an issue." The association agrees, and states that "[i]t is apparently the issue of declaratory relief concerning the rights and duties of the parties [that Nielsen] is now appealing."

[13] Section 2015.5 provides: "Whenever, under any law of this state or under any rule, regulation, order or requirement made pursuant to the law of this state, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn statement, declaration, verification, certificate, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may with like force and effect be supported, evidenced, established or proved by the unsworn statement, declaration, verification, or certificate, in writing of such person which recites that it is certified or declared by him or her to be true under penalty of perjury, is subscribed by him or her, and (1), if executed within this state, states the date and place of execution, or (2), if executed at any place, within or without this state, states the date of execution and that it is so certified or declared under the laws of the State of California. . . ."

[14] Nielsen's brief declaration stated: "I [NIELSEN] AM THE DEFENDANT IN THE ABOVE REFERENCED MATTER, AND DECLARE UNDER PENALTY OF PERJURY AS FOLLOWS: [¶] 1. I first became aware of the Lis Pendens on my property about two weeks ago when I attempted to secure a refinance through 'World Savings.' I wanted to place my financial affairs in order, especially since I am still recouping from the loss of my wife in April 2003. [¶] 2. As far as *the deck* is concerned this *is not a permanent structure, and completely detachable.* [¶] 3. I obtained approval of the Architectural Committee of the Association before the deck was built. [¶] 4. *The deck does not interfere with my neighbor's use,* and in fact improved the value of our property as there was nothing but rock and dirt in the area the deck occupies. [¶] 5. My neighbor was aware at all times that I wanted to build this deck, and never once complained to me until this suit was filed about eight months ago. [¶] 6. The City of Escondido inspected the deck and stated no permit was required for the deck." (Italics added.) Nielsen and his counsel signed and dated the declaration.

that he failed to meet his burden "to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar, supra,* 25 Cal.4th at p. 850.)

Nielsen's contention that the association acted in an arbitrary manner by directing him to remove the encroaching portion of the deck soon after its construction was approved is unavailing because it is not supported by evidence, and because the undisputed facts show that the association, its Board, and its architectural committee had no authority to approve the construction of any permanent structure other than an irrigation system on the subject easement in violation of the express prohibitory provisions of article X, section 8(c) of the CC&R's (discussed, *ante*).

Nielsen's reliance on *Deane Gardenhome Assn. v. Denktas* (1993) 13 Cal.App.4th 1394 [16 Cal.Rptr.2d 816] (*Denktas*) is misplaced. There, a homeowners association brought an action for injunctive relief and damages against two homeowners, alleging they had painted their house in violation of the association's CC&R's, which required the homeowners to obtain approval of the association's architectural review committee before painting the exterior of the house and restricted the color choices to those the association approved. (*Id.* at pp. 1395–1396.) The homeowners hired a painter to paint their house green and pink, and the painter took paint samples to the association's president to obtain his approval. The president approved the green paint color, but told the painter to "tone down" the pink color. (*Id.* at p. 1396.) When the painter returned with a different shade of pink, the president approved that color. (*Ibid.*) The trial court entered judgment in favor of the homeowner defendants, but denied their request for attorney fees. (*Ibid.*) The Court of Appeal reversed the order denying the homeowners' request for attorney fees, reasoning that they were entitled to an award of reasonable attorney fees under the fees provision of the CC&R's because they had successfully defended the suit that the homeowners association had brought against them, and thus they were the prevailing parties. (*Id.* at pp. 1398, 1399.)

*Denktas* is factually distinguishable in that the restrictive covenants in that case did not prohibit that which the president of the homeowners association approved: the color of the paint that the homeowner defendants had used to paint the exterior of their house. (See *Denktas, supra,* 13 Cal.App.4th at p. 1396.) The restrictive covenants required the homeowners to obtain approval of the color they chose, and they obtained that approval. (*Ibid.*) Here, in contrast, the CC&R's expressly prohibited that which the Board found the architectural committee had erroneously approved: the

construction of a "permanent structure other than irrigation systems" (Nielsen's deck) over the appurtenant side yard easement on Kendall's property.

We reject Nielsen's contention that the relative hardship doctrine (see *Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749, 754 [110 Cal.Rptr.2d 861] (*Hirshfield*))[15] should be applied because (he asserts) there is nothing to show that the association, in bringing this action for injunctive and declaratory relief "based on a breach of the CC&Rs and the deck and hot tub causing a nuisance to [Kendall's] residence," has been irreparably damaged. Nielsen is claiming that the association is not entitled to summary judgment because proof of irreparable injury is an element of a claim for injunctive relief and here the association is only suing on behalf of Nielsen's neighbor, Kendall, and thus cannot show that *it* has suffered an irreparable injury. Nielsen cites *Field-Escandon v. DeMann* (1988) 204 Cal.App.3d 228, 238 [251 Cal.Rptr. 49], which held that a trial court has discretion to deny a mandatory injunction to remove an encroachment, and in exercising that discretion the court should balance or weigh the relative hardships. Nielsen also relies on *Christensen, supra,* 114 Cal.App.2d 554, and *Hirshfield, supra,* 91 Cal.App.4th 749, which he asserts are on point.

Nielsen, however, incongruously maintains that because he has removed the encroaching portion of the deck, "[t]he allegation regarding the removal of a portion of the deck that encroaches over the easement is no longer an issue." Nielsen thus appears to concede that application of the relative hardship doctrine is a moot issue because the association's claim for a mandatory injunction is now moot.

Assuming that the issue of the applicability of the relative hardship doctrine is not moot with respect to the association's remaining claim for declaratory relief, Nielsen has presented no evidence with respect to the relative hardships that he claims should be balanced in this matter. As already discussed, Nielsen's evidence primarily consisted of his own declaration (see fn. 14, *ante*), which the court, in a ruling Nielsen does not challenge, found

---

[15] The *Hirshfield* court explained that "[t]he doctrine we refer to as 'relative hardship' is the equitable balancing required by *Christensen* [*v.* Tucker (1952) 114 Cal.App.2d 554 [250 P.2d 660] (*Christensen*)] and related decisions. The case law and commentaries use various other labels, such as ' "balancing of equities" ' [citation], 'balancing conveniences' [citation], and 'comparative injury' [citation]. For consistency, we will call it the 'relative hardship doctrine.' " (*Hirshfield, supra,* 91 Cal.App.4th at p. 754, fn. 1.)

inadmissible. Even if Nielsen's brief declaration were admissible, it contains no evidence regarding the relative hardships that he claims should be weighed.

The *Christensen* and *Hirshfield* cases, upon which Nielsen relies, are distinguishable in that neither case involved an action by a homeowners association authorized to remove an easement encroachment that violated the express provisions of applicable restrictive covenants. In *Christensen*, which involved a dispute between owners of adjoining parcels of real property in Santa Cruz, the plaintiff sought a mandatory injunction to compel removal of a cement abutment that the defendants had mistakenly constructed on the plaintiff's land. (*Christensen, supra,* 114 Cal.App.2d at p. 555.) In *Hirshfield*, which involved a dispute between owners of adjoining parcels of real property in Bel-Air, the defendants' cement block wall encroached upon the plaintiffs' land. (*Hirshfield, supra,* 114 Cal.App.2d at p. 756.) As already noted, none of the plaintiffs in those cases was a homeowners association charged with the responsibility of enforcing valid restrictive covenants, and in neither case did the encroachment constitute a violation of such covenants.

■ Also unavailing is Nielsen's contention that the summary judgment should be reversed because the association denied him a hearing before the Board approved a motion requesting him to remove the portion of the deck that extended over the easement. Ordinarily, issues not raised in the trial court proceedings are waived. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2004) ¶ 1:44, p. 1-9 (rev. # 1, 2002).) Here, a review of both Nielsen's written opposition to the summary judgment motion and the reporter's transcript of the oral argument on that motion shows that Nielsen did not raise this contention in the trial court, and thus he has waived this point. Were it necessary to reach the merits of this contention, we would conclude the record shows that Nielsen was present at the Board meeting at which the Board approved the motion to direct him to remove the encroaching portion of his deck and that he participated in the proceedings and had an opportunity to be heard. Specifically, the Board's October 15, 2002 minutes indicate that Nielsen was the president of the association at the time of the meeting, and the minutes referred to item No. 2230-34 HH on the agenda as "Problem re deck at 2234 abutting home at 2230, Nielsen and Kendall." Those minutes also state: "Paul [Nielsen] shared items in a title report which he felt were apropos. Mrs. Kendall stated her case, including not having access to the side of her home, noise from spa heater and what she called 'illegality' of a

permanent structure in the area she owned (servient tenement). She stated if she decided to sell, the buyer would not be able to get clear title. She also pointed out she was not advised of project in advance and had no opportunity to state her objections on the [architectural approval request form]. At this point Paul excused himself so that the Board could vote."[16]

In sum, the record shows that Nielsen failed to meet his burden of presenting evidence establishing the existence of a triable issue of material fact, and the association met its burden of persuasion that there is no triable issue of material fact and that it is entitled to judgment as a matter of law. Accordingly, we affirm the summary judgment.

### B. *Attorney Fees Order*

Nielsen also appeals the attorney fees order that awarded reasonable attorney fees in the amount of $9,672.35 to the association as the prevailing party in this matter. The record shows that the award was based on article X, section 9, of the CC&R's, which provides in part that "[i]n the event the Association . . . shall commence litigation to enforce any of the Covenants, Conditions or Restrictions contained in [the CC&R's], *the prevailing party* in such litigation *shall be entitled to* costs of suit and *such sum for attorney's fees as the Court may deem reasonable.*" (Italics added.)

 "The most fundamental rule of appellate review is that an appealed judgment or order is presumed to be correct." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra*, ¶ 8:15, pp. 8-4 to 8-5 (rev. # 1, 2004), italics omitted.) As the appellant, Nielsen has the burden of presenting "argument and legal authority on each point raised on appeal." (*Id.,* ¶ 8:17.1, p. 8-5 (rev. # 1, 2004).)

Although his appellant's opening brief raises the issue of whether the association was entitled to an award of attorney fees in this matter, Nielsen fails to present any argument or legal authority regarding this issue in either that brief or his appellant's reply brief. Accordingly, we presume the award of attorney fees was proper. As the prevailing party in the summary judgment proceeding, the association is entitled to recover reasonable attorney fees it has incurred both in the trial court proceedings and on appeal.

---

[16] In light of the foregoing, we need not address Nielsen's remaining contentions.

## C. *Expungement Order and This Court's Writ Decision*

Last, Nielsen's appellant's opening brief states that he is also appealing from the court's order granting his motion to expunge the lis pendens recorded by the association, and that he is requesting review of this court's April 2004 decision in the writ petition proceeding (*Woodridge Escondido, supra,* D043860) to issue a peremptory writ directing the court to vacate its expungement order and enter a new order denying Nielsen's motion to expunge.[17] Nielsen claims that the trial court properly expunged the lis pendens because the association failed to state a "real property claim" within the meaning of section 405.4 (the provisions of which are set forth in fn. 8, *ante*).

### 1. *Background*

In granting Nielsen's motion to expunge the lis pendens, the court found that although the association's complaint alleged that Nielsen's deck encroached upon an easement, the complaint failed to state a "real property claim" as defined in section 405.4 because it "[did] not affect possession of real property since a judgment in favor of [the association] will merely require removal of personal property, to wit, the deck." The association challenged the expungement by filing in this court a writ petition (*Woodridge Escondido, supra,* D043860), arguing that the definition of "real property claim" in section 405.4 included "the use of an easement identified in the pleading."

In *Woodridge Escondido, supra,* D043860, this court concluded that the association was entitled to writ relief because it had asserted a real property claim against Nielsen within the meaning of section 405.4 by filing a complaint for declaratory and injunctive relief alleging that Nielsen violated the CC&R's by constructing a deck in the restricted area of the side yard easement. This court explained that "[w]hether or not the deck [was] labeled personal property, a fixture or anything else, the association's claim against Nielsen [was] for his use (misuse) of the side yard

---

[17] In his appellant's opening brief, Nielsen states: "There are *three (3) specific trial court rulings* [Nielsen] is seeking review on appeal. Because the court of appeal reversed a trial court ruling to expunge lis pendens on April 26, 2004, [Nielsen] is requesting the court review that decision and ask[s] the court to take judicial notice of [*Woodridge Escondido, supra,* D043860]. . . . The *first order* was entered on January 8, 2004, regarding [Nielsen's] motion to expunge. . . ." (Italics added.) Nielsen also asserts that our "decision to reverse the trial court's ruling . . . in [*Woodridge Escondido, supra,* D043860] . . . should also be reviewed."

The record shows that the "first order" to which Nielsen refers is the superior court's January 8, 2004 order *granting* his motion to expunge the lis pendens. The record also shows that on July 15, 2004, after we issued the remittitur in *Woodridge Escondido, supra,* D043860 on June 28 of that year, the trial court complied with the writ by entering an order that vacated its order granting Nielsen's motion to expunge the lis pendens, and denied that motion. We thus presume that Nielsen is purporting to challenge the trial court's post-remittitur order denying his motion to expunge, rather than the vacated order granting that motion.

easement." Noting that Nielsen still had time to appeal the summary judgment, we also stated that "a lis pendens may remain on record while the appeal is pending. [Citation.]" Citing California Rules of Court,[18] rule 24(b)(3),[19] the opinion also stated that "the opinion is made final immediately as to this court."

Nielsen sought to challenge this court's writ decision by filing a petition for review with the California Supreme Court. In June 2004 the high court sent a letter to Nielsen's counsel stating that it had considered Nielsen's petition for review, but "ha[d] directed that the petition for review be returned unfiled." We issued the remittitur on June 28, 2004.

### 2. *Analysis*

Under section 405.39,[20] an order granting or denying a motion to expunge a lis pendens is not an appealable order. (See also Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra*, ¶ 2:259.2, p. 2-111 (rev. # 1, 2001).) Thus, this court has no authority to review on appeal either the court's initial order granting Nielsen's motion to expunge the lis pendens (an order in Nielsen's favor) or its subsequent order denying that motion following this court's issuance of the peremptory writ and the remittitur.

This court also has no authority to review our writ decision in *Woodridge Escondido, supra,* D043860. As already noted, the opinion stated that it was "final immediately as to this court." Nielsen challenged the decision by attempting to file a petition for review with the Supreme Court, which considered it and then returned it to him unfiled. Because the writ decision is final as to this court, we have no power to review it. (See also rule 24(b)(1) ["[e]xcept as otherwise provided in this rule, a Court of Appeal decision . . . is final in that court 30 days after filing"].) In sum, we affirm the summary judgment and award of attorney fees in favor of the association and conclude that we have no authority to either reach the merits of Nielsen's purported appeal of an expungement order, or review this court's final writ decision.

---

[18] All further rule references are to the California Rules of Court.

[19] Rule 24(b)(3) provides in part: "If necessary to . . . promote the interests of justice, a Court of Appeal may order early finality in that the court of a decision granting a petition for a writ within its original jurisdiction . . . . *The decision may provide for finality in that court on filing* or within a stated period of less than 30 days." (Italics added.)

[20] Section 405.39 provides: "*No order* or other action of the court *under this chapter shall be appealable.* Any party aggrieved by an order made on a motion under this chapter may petition the proper reviewing court to review the order by writ of mandate. The petition for writ of mandate shall be filed and served within 20 days of service of written notice of the order by the court or any party. The court which issued the order may, within the initial 20-day period, extend the initial 20-day period for one additional period not to exceed 10 days. A copy of the petition for writ of mandate shall be delivered to the clerk of the court which issued the order with a request that it be placed in the court file." (Italics added.)

## DISPOSITION

We affirm the judgment and the attorney fees order. The association shall recover its costs and attorney fees on appeal. The cause is remanded to the trial court for a determination of the amount of reasonable attorney fees and costs on appeal the association shall recover from Nielsen under the provisions of article X, section 9, of the CC&R's.

Haller, J., and O'Rourke, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 31, 2005.