Filed 11/23/15  Certified for publication 12/22/15 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JUAN CRUZ et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> SUN WORLD INTERNATIONAL, LLC, <br><br> Defendant and Respondent. | F069719 <br><br> (Super. Ct. No. S-1500-CV-271297) <br><br> **OPINION** |

APPEAL from an order of the Superior Court of Kern County.  Sidney P. Chapin, Judge.

Marlin & Saltzman, Louis M. Marlin, Stephen P. O'Dell, Adrian R. Bacon; Nava Law Firm, Cesar H. Nava, Stanley J. Hodson; Law Offices of Santos Gomez and Santos Gomez for Plaintiffs and Appellants.

Nixon Peabody, Robert K. Carrol, Paul R. Lynd, Aldo E. Ibarra; Arent Fox and Robert K. Carrol for Defendant and Respondent.

Plaintiffs appeal from the denial of their motion for class certification.  They contend the trial court's ruling abused its discretion because it rested on improper criteria or erroneous legal assumptions.  We find no such error has been demonstrated and affirm.

## *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiffs filed this action on behalf of themselves and all others similarly situated. They alleged defendant owned, controlled, or operated agricultural operations in California. The original complaint was alleged on behalf of the named plaintiffs and "all other persons employed by Defendants" as nonexempt agricultural employees. After being granted leave to amend, plaintiffs filed a first amended complaint, which was alleged on behalf of the named plaintiffs and "all other persons employed directly and/or indirectly through the use of a farm labor contractor by Defendants" as nonexempt agricultural employees. Plaintiffs alleged they and the other members of the proposed class were jointly employed by defendant. Defendant maintained policies and practices that resulted in defendant not paying plaintiffs and other nonexempt agricultural employees all wages due them. It required employees to perform preshift and postshift work without compensation, failed to provide them their full rest and meal breaks or compensate them for breaks that were not provided, required them to provide their own tools without reimbursement,[1] and required them to wash their grape harvest trays without compensation. As a result of these practices, plaintiffs alleged defendant also failed to provide its employees with accurate itemized wage statements and failed to timely pay all wages due at the time of termination of employment.

Approximately three years after the original complaint was filed, plaintiffs moved for class certification. In the motion, plaintiffs asserted that all their claims stemmed from one common practice, which allegedly violated the law and presented common issues suitable for class determination. Plaintiffs contended defendant scheduled times for its workers' work shifts and breaks, then recorded time and paid wages based strictly

---

[1] Plaintiffs did not seek class certification of the fifth cause of action, which sought remedies for the class members' purchase of tools used in their work for defendant. Accordingly, we need not discuss those claims in reviewing the denial of the motion for class certification.

on this schedule, even though the schedule did not accurately reflect the actual times the workers spent working. Plaintiffs asserted the direct employees were required to report to work early to set up their work stations and to attend meetings (known as escuelitas) prior to the scheduled start time; additionally, the direct workers were required to finish packing grapes and clean up after the scheduled ending time, without compensation. Further, plaintiffs claimed the direct employees were required to take home their grape harvest trays, and wash and sanitize them on their own time and with their own equipment.

Plaintiffs contended the rest and meal breaks of both direct employees and workers supplied by farm labor contractors (FLCs) were shortened by the time it took them to leave the fields and walk to the designated eating area, and to wash their hands and return to the fields before beginning work again. Direct employees and FLC workers were not paid an additional hour of pay for each meal or rest period they were denied, as required by Labor Code section 226.7.

As a result of these practices, plaintiffs asserted, workers were not fully compensated for their work time, were not given their full meal and rest breaks or compensated for breaks they were denied, their wage statements were therefore inaccurate, and they were not paid in full on termination.

Plaintiffs sought to certify a class of those employed by defendant as nonexempt agricultural employees, either directly or through the use of FLCs. In support of the motion, plaintiffs presented the declarations of their attorneys, the two named plaintiffs, and 20 other putative members of the proposed class; excerpts from the deposition transcripts of 13 witnesses, including representatives of defendant and the owners or operators of seven FLCs that provided workers to defendant; and various documents, including contracts between the FLCs and defendant.

In opposition, defendant argued plaintiffs had not demonstrated the requirements for class certification had been met. It submitted its own evidence, including the

3.

declarations of 221 putative class members and excerpts from depositions, which generally contradicted the testimony presented by plaintiffs. Defendant asserted the direct employees and the FLC workers were not paid pursuant to a standard schedule. The direct employees did not begin work early or end late, were paid for all their time, and were not required or permitted to take the harvest trays home and wash them during the class period. Both the direct employees and the FLC workers were provided meal and rest periods in accordance with the law.

Plaintiffs replied, contending they had shown the elements for class certification were met, and defendant had addressed the merits of plaintiffs' claims rather than the elements relevant to class certification. Additionally, they objected to the worker declarations submitted by defendant with its opposition, which they contended were coerced and should be disregarded.

The trial court denied the motion for class certification. It found the FLC workers were not a sufficiently ascertainable group for class treatment; further, they were not members of the proposed class because plaintiffs failed to establish they were joint employees of defendant. Limiting the proposed class to directly hired employees, the trial court concluded common issues did not predominate over individual issues, the named plaintiffs' claims were not typical of those of the class, the named plaintiffs were not adequate representatives of the class, and a class action was not a superior means of adjudicating the claims because of the lack of commonality of issues. Plaintiffs appeal from the denial of the motion for class certification.

### DISCUSSION

**I.      Standard of Review**

"On review of a class certification order, an appellate court's inquiry is narrowly circumscribed. 'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the

4.

efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." [Citation.] A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions.'" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1022 (*Brinker*).) In this appeal, plaintiffs purport to challenge the ruling only on the ground it was based on improper criteria or erroneous legal assumptions, and not on the ground of insufficiency of the evidence to support the ruling.

"'Ordinarily, appellate review is not concerned with the trial court's reasoning but only with whether the result was correct or incorrect. [Citation.] But on appeal from the denial of class certification, we review the reasons given by the trial court for denial of class certification, and ignore any unexpressed grounds that might support denial. [Citation.] We may not reverse, however, simply because *some* of the court's reasoning was faulty, so long as *any* of the stated reasons are sufficient to justify the order. [Citation.]' [Citation.] Any valid, pertinent reason will be sufficient to uphold the trial court's order." (*Thompson v. Automobile Club of Southern California* (2013) 217 Cal.App.4th 719, 726.)

## II. Class Certification

"The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. [Citations.] 'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class."'" (*Brinker*, *supra*, 53 Cal.4th at p. 1021.)

"The 'ultimate question' the element of predominance presents is whether 'the issues which may be jointly tried, when compared with those requiring separate

5.

adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.] The answer hinges on 'whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.' [Citation.] A court must examine the allegations of the complaint and supporting declarations [citation] and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible. 'As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.'" (*Brinker*, *supra*, 53 Cal.4th at pp. 1021–1022, fn. omitted.)

## III.     Definition and Scope of Proposed Class

Plaintiffs' motion for class certification defined the proposed class as: "All persons who, during the Class Period [August 11, 2006, to entry of judgment], were employed or had been employed directly, or indirectly through the use of farm labor contractors, by Defendant … in the state of California, and who worked as non-exempt agricultural employees, and further excluding supervisors, managers, and forepersons." (Fn. omitted.) Plaintiffs also sought certification of two subclasses: members of the class who had been employed directly by defendant (the direct hire subclass) and members of the class whose work arrangement with defendant ended during the class period (the terminated subclass). Thus, the class was composed of two main groups: workers who were employed directly by defendant and workers who were employed by FLCs and performed work in defendant's agricultural operations.

In their motion, plaintiffs presented evidence that, prior to April 2011, defendant directly employed six crews of agricultural laborers, with approximately 60 members in each crew at the height of the harvest season. In April 2011, after the complaint in this action was filed, defendant laid off all of its direct employees and changed its business practices so that it used only workers supplied by FLCs.

Plaintiffs presented the declarations of 22 former direct employees of defendant in Kern County, all of whom worked harvesting grapes, and some of whom also tended the grapevines. Some claimed to have worked directly for defendant until August or November 2011. Many stated that, after they were terminated by defendant, they began to work for FLCs, performing the same work in defendant's vineyards as they had as direct employees.

In opposition to plaintiffs' motion, defendant presented evidence that it has grown a variety of fruits and vegetables in California. In the Kern County area, it has grown grapes and stone fruit, including peaches, plums, and apricots. In Tulare County, it has grown lemons. In the Coachella area in Riverside County, it has grown grapes, peppers, and strawberries. In Blythe, in Riverside County, it grew lemons until January 2013. The statewide class, as defined by plaintiffs, would include defendant's nonexempt agricultural workers in all these areas, both directly hired and supplied by FLCs.

Defendant's evidence indicated that, prior to April 2011, its Kern County grape operation employed 6 crews of direct employees, but the majority of the workers were supplied by FLCs. The April 2011 transition from direct employees to FLC workers occurred only in Kern County. In the Coachella area, the transition to exclusively using FLC workers occurred in the mid-1990s, although defendant still directly employs some tractor drivers and workers who irrigate the crops there. The operation in Blythe never used FLC workers; it exclusively used direct employees, who were unionized.

The primary issue plaintiffs contend is common to the class and makes the case amenable to class treatment is the question whether the FLC workers were joint employees of defendant. That question is not common to all class members, however. It pertains only to the workers supplied by FLCs and not at all to those directly employed by defendant. Plaintiffs did not seek certification of a subclass of FLC workers.

The motion for class certification indicates the only claims asserted on behalf of the entire class are the claims that defendant's workers were not provided their full meal

and rest breaks or properly compensated for the failure to provide them.  Regarding the claims for compensation for preshift and postshift work, washing harvest trays, and attending escuelitas prior to the start of the work shift, the declarations presented by plaintiffs indicate only the direct employees claim to have engaged in those activities and seek compensation for them.  The declarations of workers who worked for FLCs after their employment with defendant was terminated stated that, while employed by FLCs, those workers did not engage in any preshift or postshift uncompensated work, did not wash any harvest trays, and were compensated for time spent in escuelitas.

## IV.    Ascertainability of FLC Workers

"The ascertainability requirement is a due process safeguard, ensuring that notice can be provided 'to putative class members as to whom the judgment in the action will be res judicata.'" (*Sotelo v. Medianews Group, Inc*. (2012) 207 Cal.App.4th 639, 647–648.) "Class members are ascertainable when they may be readily identified without unreasonable expense or time by reference to official records.  [Citation.]  'In determining whether a class is ascertainable, the trial court examines the class definition, the size of the class and the means of identifying class members.'" (*Faulkinbury v. Boyd & Associates, Inc*. (2013) 216 Cal.App.4th 220, 240 (*Faulkinbury*).)

A plaintiff seeking class certification bears the burden of satisfying the requirements for certification, including the element of ascertainability.  (*Soderstedt v. CBIZ Southern California, LLC* (2011) 197 Cal.App.4th 133, 154.)  Pleadings are not evidence and cannot satisfy the plaintiff's evidentiary burden.  (*Ibid*.)  The trial court may consider the totality of the evidence, including evidence presented by the defendant, in determining whether the plaintiff has established the elements required for class certification.  (*Ibid*.)

### A.    The trial court's ruling

"[I]n reviewing a denial of class certification, 'we consider only the reasons given by the trial court for the denial, and ignore any other grounds that might support denial'

8.

[citation].  Accordingly, 'when denying class certification, the trial court must state its reasons.'" (*Dailey v. Sears, Roebuck & Co.* (2013) 214 Cal.App.4th 974, 986 (*Dailey*).) The trial court's ruling, however, need not be detailed.  (*Ibid.*)  "Indeed, California courts have held that even if the trial court's order on class certification does not state reasons, or does so without providing detail, it will be deemed sufficient for review purposes so long as the basis for the court's ruling may be discerned from the record."  (*Ibid.*)

In denying the motion for class certification as to the FLC workers, the trial court stated:  "The class is not ascertainable to warrant class treatment with regard to Farm Labor Contract workers .…  Plaintiffs fail to establish that the Farm Labor Contract workers are joint employees of Sun World … so are not members of the proposed class."

Plaintiffs state the ruling does not contain analysis of how the trial court concluded the FLC workers were not ascertainable, but the trial court "appears to have based it on the grounds that 'Plaintiffs fail to establish that the Farm Labor Contract workers are joint employees of Sun World.'"  Plaintiffs interpret the ruling to mean the trial court found the FLC workers were not ascertainable because plaintiffs failed to prove the merits of their claim that the FLC workers were joint employees of defendant.  They contend the trial court used improper criteria or erroneous legal assumptions in reaching its conclusion on ascertainability because it erroneously required plaintiffs to establish the merits of their claim in order to demonstrate that the FLC worker portion of the class is ascertainable.

Defendant counters that the two statements the trial court made in its ruling are independent bases for denying class certification of the FLC worker portion of the proposed class.  It asserts both are correct, but if not, the first reason alone is a sufficient basis for denying certification of the FLC workers.

We construe the trial court's first statement as expressing its conclusion on the element of ascertainability of the FLC worker portion of the class.  We construe the second sentence of the ruling to be a response to the arguments made in plaintiffs' reply

9.

papers in the trial court. In that reply, plaintiffs argued defendant was attempting to demonstrate the proposed class was not ascertainable by showing defendant did not, and was not required to, keep records containing the contact information for the FLC workers. Plaintiffs asserted: "This is 'putting the cart before the horse,' however, because once Plaintiffs establish that Defendant is a joint employer with the FLCs, then accurate record keeping was in fact … one of Defendant's legal responsibilities."

Ascertainability of the proposed class, however, must be determined at the time of class certification. It is one of the elements a plaintiff must demonstrate in order to obtain certification of the proposed class. (*Brinker*, *supra*, 53 Cal.4th at p. 1021.) If, as plaintiffs contended, ascertainability depends upon a determination that the FLC workers are joint employees of defendant, then that determination must be made at the time the motion for class certification is considered in order to establish ascertainability and certify the class. Plaintiffs may not wait until the merits of the class claims are adjudicated to establish a basis for finding the proposed class is ascertainable.

### B. *Joint employment*

"A class certification motion is not a license for a free-floating inquiry into the validity of the complaint's allegations; rather, resolution of disputes over the merits of a case generally must be postponed until after class certification has been decided [citation], with the court assuming for purposes of the certification motion that any claims have merit." (*Brinker*, *supra*, 53 Cal.4th at p. 1023.) However, "'issues affecting the merits of a case may be enmeshed with class action requirements.'" (*Ibid*.) Analysis of the propriety of class certification may entail some overlap with the merits of the underlying claims. (*Ibid*.) In that event, evaluation of the merits of the plaintiffs' claims is proper. (*Id*. at pp. 1023–1024.)

Plaintiffs argue it was not appropriate for the trial court to determine the merits of the joint employment issue in ruling on the motion for class certification. However, plaintiffs essentially conceded the issue of joint employment was enmeshed with the

10.

issue of ascertainability.  In their reply brief in the trial court, plaintiffs argued that, if the FLC workers were joint employees of defendant, then defendant had a legal obligation to maintain records of their names and contact information.  By implication, they believe if defendant failed to do so, the absence of records identifying the putative class members should not be used as the basis for finding a lack of ascertainability.

When ascertainability of the class is in issue, the trial court need not assume the truth of the plaintiffs' claim that the defendant is the employer of the putative class members and therefore is obligated to maintain a record of their identities.  In *Sotelo, supra,* the plaintiffs sued on behalf of themselves and a class of those similarly situated who worked for the defendant newspaper publishers folding, bagging, and delivering newspapers or supervising those who did.  (207 Cal.App.4th at pp. 644–645.)  The plaintiffs alleged the class members were the defendants' employees, but the defendants treated them as independent contractors in order to evade the defendants' legal responsibilities to them as employees.  (*Id*. at p. 645.)  The trial court denied the plaintiffs' motion for class certification, implicitly finding the proposed class was not ascertainable.  (*Id*. at p. 648.)  The appellate court affirmed.  (*Id*. at p. 663.)

The evidence indicated some of those who contracted with the defendants to deliver newspapers performed the work themselves, some engaged family members to assist with the work, and others became distributors and used employees to perform the work.  (*Sotelo, supra,* 207 Cal.App.4th at p. 646.)  Thus, an unknown number of putative class members had no contractual relationship with the defendants and could not be identified through the defendants' records.  (*Id*. at p. 649.)  The evidence did not indicate the extent to which distributors kept records identifying their carriers, but the court noted the distributors might have no incentive to produce such records, because the carriers might have claims against them as well.  (*Ibid*.)  Addressing the absence of records identifying the putative class members, the court stated:

11.

"Appellants also argue that any difficulties with identifying putative class members are due to respondents' failure to keep accurate records and that respondents cannot defeat certification by their own wrongdoing in not maintaining proper records. For this proposition, appellants rely on *Aguiar v. Cintas Corp. No. 2* (2006) 144 Cal.App.4th 121, 136 …. In *Aguiar* the dispute concerned certain employees of Cintas who had worked on the company's contracts with the Los Angeles Department of Water and Power (DPW). [Citation.] Cintas was under a contractual obligation to track the employees who worked on DPW contracts, but failed to do so. [Citation.] Thus, when the court concluded that Cintas could not defeat class certification, on ascertainability grounds, because of its own failure to keep records that it was obligated to keep, that obligation was uncontested and independent of the outcome of the employees' suit. Here, any obligation on respondents' part to track all members of the proposed class depends on the merits of the suit being brought. Appellants cannot bootstrap their action merely by assuming as true what they are obligated to prove." (*Sotelo*, *supra*, 207 Cal.App.4th at pp. 649–650.)

Similarly, in this case, plaintiffs argued in the trial court that defendant was required to maintain records containing contact information for the putative class members who worked for FLCs because those putative members were joint employees of defendant and the FLCs. Plaintiffs contended they were not required to prove the merits of the joint employee issue at the class certification stage of the proceeding. Plaintiffs cannot establish the element of ascertainability by merely assuming as true what they are required to prove: that defendant was a joint employer of the FLC workers included in the putative class, that it was required to maintain records containing their identifying information, and that it either kept such records and they can be used to identify the putative class members or failed to do so and should not be able to defeat certification by its own wrongdoing.

For the first time on appeal, plaintiffs cite Labor Code section 1695.55 and contend it imposes a duty on defendant to maintain records identifying the putative class members, regardless of whether it is their joint employer. At the time the certification motion was heard and decided, that section provided:

"(a) Every person acting in the capacity of a farm labor contractor shall provide any grower with whom he or she has contracted to supply farmworkers a payroll record for each farmworker providing labor under the contract. The payroll record shall include a disclosure of the wages and hours worked for each farmworker.

"(b) Each grower entering into a contract with a farm labor contractor shall retain a copy of the payroll record provided by the contractor for the duration of the contract." (Former Lab. Code, § 1695.55.)[2]

Plaintiffs raised the issue in cursory fashion in their opening brief, merely quoting the statute, then asserting it required defendant to maintain business records that identify the FLC workers, and resort to such official records would satisfy the ascertainability element. The statute, however, required the FLC to provide, and the grower to retain, a payroll record that disclosed "the wages and hours worked" for each FLC worker. (Former Lab. Code, § 1695.55, subd. (a).) It did not expressly require the payroll record to include the worker's Social Security number, address, telephone number, or other contact information.

In their reply brief, plaintiffs added that, if defendant failed to keep the payroll records as required, the class should not have been penalized by denial of certification; rather, the trial court "should have employed 'a relaxed standard of proof'" of

_____

[2] The statute was amended effective January 1, 2015. Subdivision (a) now requires the payroll record to disclose "the net and gross wages, total hours worked, and total hourly and piece rate earnings," rather than "the wages and hours worked," for each worker. Additionally, subdivision (b) now requires the grower to retain the payroll record for three years after the contract has ended. (Lab. Code, § 1695.55, as amended by Stats. 2014, ch. 750, § 7.)

13.

ascertainability. Plaintiffs suggested using subpoenas to the FLCs or notice by publication to identify and locate the FLC workers who are putative class members.

"Ordinarily, issues not raised in the trial court proceedings are waived." (*Woodridge Escondido Property Owners Assn. v. Nielsen* (2005) 130 Cal.App.4th 559, 574.) Further, "points raised for the first time in a reply brief on appeal will not be considered." (*Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 583.) "'However, "a litigant may raise for the first time on appeal a pure question of law which is presented by undisputed facts."'" (*Sanchez v. Truck Ins. Exchange* (1994) 21 Cal.App.4th 1778, 1787.) Consideration of such an issue may be appropriate when the parties have already briefed the issue, or where the cases relevant to the issue were decided after the trial court's ruling. (*In re C.T.* (2002) 100 Cal.App.4th 101, 110, fn. 7; *Palmer v. Shawback* (1993) 17 Cal.App.4th 296, 300.)

We decline to consider plaintiffs' belated arguments. They were not presented in the trial court. Plaintiffs' opening brief contained only a perfunctory mention of Labor Code section 1695.55 and its purported effect. It did not discuss the source of the purported requirement that the payroll records include contact information for the worker; it did not consider the effect on ascertainability of the requirement that the grower retain the records of each FLC only "for the duration of the contract." (Former Lab. Code, § 1695.55, subd. (b).) Defendant had no opportunity to respond in writing to the arguments made in plaintiffs' reply brief. The issues raised by the reply, including whether the class could be ascertained from records subpoenaed from the FLCs or by giving notice by publication to the putative class members, involve factual issues for trial court determination and require an exercise of the trial court's discretion. The issues raised by plaintiffs based on the statute were not presented, developed, or ruled on in the trial court, and plaintiffs offer no explanation for their failure to present the arguments in the trial court. Further, plaintiffs' arguments were not fully briefed on appeal.

14.

We conclude the trial court's ruling denying certification of the FLC worker portion of the class on the ground it was not ascertainable was not based on improper criteria or erroneous legal assumptions. Plaintiffs have not established any error in that ruling.

### C.    *Ascertainability*

Plaintiffs assert that, in ruling on ascertainability, the trial court must examine "the class definition, the size of the class and the means of identifying the class members." (*Sotelo*, *supra*, 207 Cal.App.4th at p. 648.) They complain the trial court's ruling did not analyze these factors. The trial court's ruling need not contain a detailed discussion of each factor, if the basis of its ruling may be discerned from the record. (*Dailey*, *supra*, 214 Cal.App.4th at p. 986.)

The proposed class was defined in plaintiffs' motion. It included both direct employees of defendant and employees of the FLCs who contracted with defendant to provide defendant workers. There was no real dispute the proposed class was large. A representative of defendant testified in deposition that there were 1,351 direct employees during the class period; another testified that, even before defendant switched to using only FLC workers in Kern County, FLCs provided the majority of the workers it used there. Estimates of the total proposed class ran as high as 7,200.

The issue was whether the members of the proposed class could be identified "without unreasonable expense or time." (*Faulkinbury*, *supra*, 216 Cal.App.4th at p. 240.) In their motion, plaintiffs asserted the class was ascertainable because the members could be easily identified through defendant's time sheets, "which provide a name and [S]ocial [S]ecurity number of each individual who works in a crew at Sun World." They also asserted defendant had already produced a class list during discovery.

Defendant presented evidence that the class list already produced did not include all the putative class members, because the list was compiled before the filing of the first amended complaint, when only direct employees were members of the proposed class.

Thus, it did not include the FLC workers. In discovery responses, defendant identified 103 FLCs it used during the class period. Defendant produced over one million pages of documents, over 400,000 of which were time sheets for workers employed by FLCs. The time sheets identified the workers only by their names and employee numbers or the last four digits of the individual's Social Security number. In some cases, the individual's full Social Security number appears on the time sheets. At oral argument, counsel for defendant asserted the time sheet records are not kept electronically. Thus, searching and organizing the paper records to compile a list of class members would be time consuming.

Defendant also presented evidence that plaintiffs attempted to obtain documents by subpoena from sixteen FLCs who supplied workers to defendant. Plaintiffs were unable to serve the subpoenas on two of the FLCs. One FLC filed a motion for a protective order, which was later taken off calendar. Eight depositions were taken and plaintiffs took the remainder off calendar. The FLCs who were deposed produced limited records, either because they objected to production or because they had few retained records to produce.

Although in reply plaintiffs asserted that paralegals in their attorneys' office were able to locate, subpoena, and depose four putative class members based on information in the time sheets defendant produced, plaintiffs did not disclose how difficult or how long the process took of locating them.

Thus, there was ample evidence supporting a determination that the FLC worker portion of the class was not ascertainable because the members could not be readily identified without unreasonable expense or time. (*Faulkinbury*, *supra*, 216 Cal.App.4th at p. 240.) Plaintiffs failed to demonstrate the trial court relied on any improper criteria or erroneous legal presumptions in concluding the FLC worker portion of the proposed class was not ascertainable.

## V.    Certification of Class of Direct Employees

### A.    *The trial court's ruling*

After determining the FLC worker portion of the putative class was not ascertainable, the trial court stated: "The proposed class definition is therefore limited to Plaintiffs' termed 'direct hires' (those workers hired directly by Sun World) and the 'terminated' employees subclass." As to that more limited putative class, the trial court concluded: "The questions of fact common to the class are not substantially similar in the causes of action, individual issues predominate over the questions that are common to the class … and the evidence presented conflicts so that commonality of facts cannot be determined." The trial court then discussed its findings as to each cause of action alleged by plaintiffs.

As to the first cause of action, which alleged plaintiffs and the class were not compensated for idle time or preshift or postshift work, the trial court found it "fail[ed] to have predominant common questions of fact as the declarations between the parties sufficiently conflict in fact so that it cannot be determined that there was a commonality in the facts regarding a failure to pay wages due." Similarly, the trial court found predominant common issues were not established for the third and fourth causes of action, which sought compensation for shortened or denied rest and meal periods, "as the declarations between the parties sufficiently conflict in fact as to the workers' experiences so that it cannot be determined that there was a commonality in the facts regarding a failure to grant" rest or meal periods.

The trial court found plaintiffs' declarations failed to address the second cause of action for overtime and double-time wages, and failed to claim an entitlement to such wages. Common issues did not predominate as to the sixth cause of action for failing to provide a proper itemized wage statement, because the parties' declarations either failed to address this cause of action or presented conflicting evidence that did not establish commonality. The seventh cause of action seeking waiting time penalties for terminated

17.

employees depended on the prior causes of action seeking wages for preshift work, postshift work, and missed meal and rest periods. Because the named plaintiffs did not claim their final paychecks were improper and because they failed to establish commonality as to the prior causes of action, they failed to show commonality as to this cause of action. Finally, as to the eighth cause of action, which sought restitution under the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) and was based on violations of law alleged in the earlier causes of action, commonality was not established due to conflicts in the workers' experiences.

Thus, the trial court denied certification for each cause of action on the ground plaintiffs failed to demonstrate that common issues predominated over individualized issues.

### B.      *Predominance of common issues*

"It is the burden of the proponent of class certification to show, with substantial evidence, that common questions of law or fact predominate over questions affecting individual members." (*Capitol People First v. State Dept. of Developmental Services* (2007) 155 Cal.App.4th 676, 689.) "The 'ultimate question' the element of predominance presents is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.] The answer hinges on 'whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.' [Citation.] A court must examine the allegations of the complaint and supporting declarations [citation] and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible." (*Brinker*, *supra*, 53 Cal.4th at pp. 1021–1022, fn. omitted.)

### 1. Joint employment

Plaintiffs argue that the predominant common issue in this case is defendant's status as a joint employer. Because the trial court concluded the FLC worker portion of the putative class was not ascertainable, it never reached the issue of commonality as to that portion of the class. The issue of joint employment does not apply to the direct employees at all. Defendant does not dispute it was the employer of its direct employees. Consequently, joint employment does not present an issue relevant to the direct employee portion of the putative class, much less a predominant common issue.

### 2. Uniform policy or practice

In their first amended complaint, plaintiffs alleged generally that defendant maintained and enforced policies and practices that resulted in defendant not paying the class members all wages due them; these policies and practices included not paying class members for idle time, requiring class members to work before and after their scheduled work time without compensation, and not giving class members the meal and rest periods required by law or compensating them for meal and rest periods that were not provided. In their motion for class certification, plaintiffs asserted their claims were based on defendant's uniform practice of filling out employees' time sheets with scheduled times for beginning work, taking breaks, and ending work, instead of recording the actual times the employees began and ended work, and began and ended their meal and rest breaks.

Plaintiffs seeking class certification may demonstrate common questions suitable for class treatment by showing defendant has a uniform policy or practice affecting the putative class members that results in violation of the law. (*Brinker*, *supra*, 53 Cal.4th at p. 1033; see also *Dailey*, *supra*, 214 Cal.App.4th at p. 992.) Plaintiffs may not simply allege such a policy or practice, however. They must present substantial evidence that proving both the existence of the defendant's uniform policy or practice and the alleged illegal effects of that policy or practice could be accomplished efficiently and manageably within a class setting. (*Dailey*, at p. 989.)

Plaintiffs presented no evidence of a formal written policy that employees be paid according to their scheduled start, end, and break times, rather than according to their actual times. They submitted defendants' Seasonal Employee Handbook; its cover indicates it was effective April 2, 2011, the day after defendant switched to an all FLC worker policy for field workers in Kern County. Thus, it was not in effect when the bulk of the direct employee class members in Kern County were employed by defendant. The handbook states employees are authorized and permitted to take 10-minute rest breaks for each four hours worked, and 30-minute meal breaks after working four hours. It prohibits skipping a rest break without signing a waiver form, and skipping or shortening a meal break for any reason. It also prohibits any supervisor or employee from pressuring an employee into skipping or shortening a meal break. The handbook requires employees to keep and submit accurate time records, but provides that some employees will keep their own time records, and others will have theirs prepared by a supervisor. It states employees will have designated starting and ending work times, employees must observe the work schedule, and defendant prohibits employees from working outside the announced work schedule. Thus, the written policies presented contradict plaintiffs' allegations of a uniform policy or practice of keeping time records and paying employees according to a set schedule, but requiring them to work longer hours and shorten their breaks, resulting in underpayment of wages.

Plaintiffs attempted to demonstrate a uniform practice through other evidence. The evidence indicates there are 1,351 putative members of the direct employee portion of the class. Plaintiffs presented the declarations of 20 former direct employees in virtually identical language.[3] They stated "my fellow workers and I" were regularly

---

[3]    There were two versions of the declaration, one by individuals who had worked in defendant's vineyards only as direct employees of defendant and the other by individuals who, after their employment with defendant was terminated, became employed by one or more FLCs, but continued to work in defendant's vineyards. The declarations within each category differed in the dates of employment, the identities of the FLCs, if any, for whom the declarant worked,

20.

instructed to arrive 15 minutes early for escuelitas; they regularly performed setup work before starting their shift; they regularly performed cleanup work after the end of their shift; and they were required to take their harvesting trays home and wash them, which took 15 to 25 minutes. The declarants asserted they were not compensated for any of this work. Further, every day they were told to sign a document that showed they worked that day; they were instructed to sign it at the beginning of their shift, when no hours were written in for the times they began work or received breaks. They were not able to see how many hours the supervisor put down on the time sheet. The employees were supposed to get a 30-minute lunch break; the lunch break began for everyone in the crew at the same time, when the supervisor would honk a car horn or yell that it was lunch time. Sometimes it would take 3 to 5 minutes to exit the field. Before returning to work, the employees were required to wash their hands; they often had to wait in line at the hand-wash station. The declarants stated they rarely received the full 30-minute break because of the time spent traveling to and from the field, walking to the hand-wash station, and washing their hands. Similarly, their 10-minute rest breaks began for all members of the crew at the same time, and were shortened by leaving and returning to the field.

The named plaintiffs did not submit similar declarations. They submitted their testimony through excerpts from their deposition transcripts. Plaintiff, Leonor Alvarado Flores (Alvarado), testified employees were required to arrive 15 minutes early, but they would arrive half an hour early and begin setting up right away. They would even begin picking grapes before the escuelita, which marked the scheduled start time. They were required to continue working 15 to 30 minutes after the stop time, and to take the trays home to wash them daily. The employees were not paid for staying late. Alvarado did

and whether the individual harvested grapes only, or tended the grapevines as well. Otherwise the declarations in each category were identical.

21.

not know if the extra time was recorded on the time sheet because she did not review the time sheet; she signed it in the morning. When the fruit was good, she was usually only able to take a meal break twice a week, and the break was only 15 minutes.

Plaintiff, Juan Cruz Chavez (Cruz) testified he worked for defendant from July to November of 2009. He stated the employees were required to arrive half an hour before the start time every day to set up their materials. In the afternoons, they worked late to complete the boxes asked for by defendant. Sometimes the forewoman would tell them to leave and not keep working; other times she would help them pack the boxes. The forewoman would not record the extra time worked on the time sheet. Employees also had to take the harvest trays home every day and clean them; this would take about half an hour. Cruz hardly ever took a lunch break and never stopped for 30 minutes. Defendant did not tell him that he could not take a meal period. The forewoman would tell them to take half an hour, but because Cruz was short on boxes, he had to work.

Defendant presented over 200 declarations of putative class members. Fifty-one of the declarants were then-current or former direct employees of defendant. Eleven of those had been employed in the lemon groves in Blythe. Their declarations were not uniform, but each stated the employee was a member of the United Farm Workers union. The declarants generally stated they were not permitted to enter the lemon groves until start time; the crew boss advised them before it was stopping time, so they could finish and leave by the stopping time. The crew started and stopped work at the same time. Their meal and rest breaks were not on a set schedule, but could be taken at any time; they were able to take a full 30 minutes for lunch. They were told to take as many breaks as they needed, and they sometimes took extra breaks when it was hot. The crew boss punched or marked individual time cards to keep track of their time; they signed their time cards at the end of the day and were given a copy to keep. The time cards accurately reflected their work time. The pay stubs they received with their paychecks also accurately reflected their work time and their pay.

Several of defendant's declarants drove tractors, irrigated the fields, or performed similar tasks; they generally worked alone rather than in crews. They took a first break of 20 minutes, a meal break of 30 minutes, and a third break of 10 minutes; although some said their supervisor established the break times, the employees took their breaks when their watches said it was time, because the supervisor was not present to tell them when it was time. They had no problem taking their full break times. Their supervisor kept their time sheets, but the employees reviewed and signed the time sheets at the end of the shift or the next day. If a time sheet was ever inaccurate, the employee told the supervisor and it was corrected. The employees also received pay stubs reflecting their work time and pay, which they reviewed and determined were accurate.

The declarations of those who worked in crews in the vineyards in Kern County were not uniform in their statements. Generally, the declarants stated they were not required to arrive earlier than the start time, and they did not, and were not allowed to, start working before their scheduled start time. The crew all started work at the same time, when the crew boss gathered the workers for the escuelita. The escuelita took place during paid work time. The crews took a 20-minute first break, a 30-minute meal break, and a 10-minute third break. Employees were allowed as many water and restroom breaks as needed. The crew boss called them in from the fields for meal and rest breaks, giving them time to leave the field before the break started. After everyone was out of the field, the crew boss gave the employees their full break or meal time, then called them back to work. The employees then washed their hands and returned to the field. They did not have a problem taking their full breaks. The crew boss called the employees in from the field in advance of the time their shift was scheduled to end, to give them time to finish packing the fruit and cleaning up before the end time. Everyone left at the end time.

Defendant's crew coordinator confirmed that breaks began when the employees had left the field; walking time was not part of the break. She also testified the crew boss

23.

called the employees in from the field before the end of the work day, so no one worked past the end.

The direct employee declarations submitted by defendant stated that crew members signed their time sheets at the beginning of the day, and the crew bosses filled in the break and end times later. The time sheets remained on a table or a vehicle nearby for the workers to review. Additionally, the pay stubs employees received with their paychecks accurately reflected their work time and their pay.

The harvest trays were used only for harvesting grapes. Defendant presented evidence that, during the class period, it had tray washing facilities and paid particular individuals to wash the harvest trays there. The field employees were not permitted to take the trays home. Additionally, many declarants who worked in the vineyards stated that, during the class period, they did not take harvest trays home to wash them.

Both parties submitted excerpts from the depositions of some of defendant's personnel, including its vice-president of human resources, human resources manager, payroll manager, and crew coordinator. That testimony indicated 95 percent of the start times reflected in the employees' time sheets were on the hour or half hour because everyone began work at same time. The recorded meal break times for the crew were the same because they all stopped and took their meal breaks at the same time. The payroll manager testified that, as far as she knew, meal breaks began when the crew boss yelled and ended 30 minutes later, and rest breaks began when the crew boss yelled and ended 10 minutes later. The vice-president of human resources, however, testified the meal break ended 30 minutes after everyone had left the field; it was the crew boss's job to make sure everyone was out of the field before the break started.

Plaintiffs presented no evidence that defendant had a uniform policy or practice that violated the law and that affected employees anywhere other than Kern County, or working with any crop other than grapes. They presented no evidence regarding the employees who worked for defendant in the lemon groves in Blythe or Tulare County, or

24.

those who worked with stone fruit; they presented no evidence regarding employees who drove tractors or irrigated the fields.

As to the direct employees in defendant's grape operation, the evidence was conflicting regarding whether defendant had any uniform policy or practice that violated the law and that could be proven by common evidence. Plaintiffs alleged defendant recorded the same start times, break times, and end times for each employee in a crew. But substantial evidence indicated the entire crew started work at the same time, ended work at the same time, and took breaks at the same time. Citing *Brinker, supra*, plaintiffs seem to contend that they alleged defendant had a uniform policy or practice, and that was their theory of recovery; the trial court was required to look only at their theory of recovery, and not at any conflicting evidence, in determining whether there were common issues suitable for classwide determination.

*Brinker* does not support plaintiffs' position. The *Brinker* court's summary of its holding indicates evidence of a uniform policy or practice, not just an allegation, is necessary in order to certify the class. The *Brinker* court stated: "In light of the substantial evidence submitted by plaintiffs of defendants' uniform policy, we conclude the trial court properly certified a rest break subclass.… With respect to the third contested subclass, covering allegations that employees were required to work 'off-the-clock,' no evidence of common policies or means of proof was supplied, and the trial court therefore erred in certifying a subclass." (*Brinker*, *supra*, 53 Cal.App.4th at p. 1017.)

Regarding the rest break subclass, the named plaintiffs in *Brinker* presented evidence, and the defendant conceded, that the defendant had a uniform written rest break policy, established at its corporate headquarters and applicable to all of its employees. (*Brinker*, *supra*, 53 Cal.App.4th at p. 1033.) Whether that policy violated the law presented a common issue. As to off-the-clock work, however, the defendants' formal policy disavowed such work, consistent with applicable law. (*Id*. at p. 1051.) The only

25.

evidence the plaintiffs presented of a uniform practice was anecdotal evidence of a handful of individual instances in which employees worked off-the-clock. (*Id*. at p. 1052.) Because there was "no substantial evidence point[ing] to a uniform, companywide policy, proof of off-the-clock liability would have had to continue in an employee-by-employee fashion, demonstrating who worked off-the-clock, how long they worked, and whether Brinker knew or should have known of their work." (*Ibid*.) Accordingly, the off-the-clock subclass should not have been certified. (*Ibid*.)

Thus, *Brinker* required the plaintiffs to demonstrate with evidence that defendant had a uniform policy or practice that could be proved using common evidence. Where a written policy that arguably violated wage laws existed, the requirement was met. Where the only evidence offered was "anecdotal evidence of a handful of individual instances" of the challenged conduct, it was within the trial court's discretion to find the requirement was not satisfied because individualized proof would be needed.

In *Dailey*, the plaintiff sought certification of a class of Sears's managers and assistant managers. (*Dailey*, *supra*, 214 Cal.App.4th at p. 977.) He alleged Sears categorically classified its managers and assistant managers as exempt from the overtime and meal and rest break requirements, but it had implemented a uniform practice of requiring them to work at least 50 hours per week and to spend the majority of their time working on nonexempt activities. (*Id*. at pp. 977–978.) The trial court denied certification; the court affirmed, finding "substantial evidence that Dailey's theory of liability—i.e., that Sears acted in a uniform manner toward the proposed class members, resulting in their widespread misclassification as exempt employees—[was] not amenable to proof on a classwide basis." (*Id*. at p. 978.)

The core dispute in *Dailey* was whether the putative class members were properly classified as exempt. (*Dailey*, *supra*, 214 Cal.App.4th at p. 989.) The job descriptions for the manager and assistant manager positions were not in dispute. (*Id*. at p. 982.) The disagreement centered on the amount of the putative class members' time that was spent

26.

on exempt managerial tasks, as opposed to nonexempt, nonmanagerial tasks. (*Id*. at p. 983.) Dailey contended the work actually performed by the class members was the same from store to store, and could be proven with common evidence. (*Id*. at pp. 983–984.) The evidence presented by Sears, however, indicated the work performed by the managers and assistant managers varied significantly from store to store and from day to day. (*Id*. at pp. 984–985.)

Like plaintiffs here, Dailey contended on appeal that the trial court used improper criteria in finding a lack of commonality. Dailey argued "the trial court erroneously 'focused on the merits' of the parties' 'conflicting testimony regarding potential variances in the job duties of [Managers and Assistant Managers],' instead of inquiring whether Dailey, pursuant to his theory of Sears's liability, 'put forth substantial evidence of uniform policies and procedures that, if proven at trial, would establish, on a class-wide basis, the misclassification of [Managers and Assistant Managers].'" (*Dailey*, *supra*, 214 Cal.App.4th at p. 990.) The court noted that, if the parties' evidence regarding the predominance of common issues is conflicting, the trial court may "credit one party's evidence over the other's in determining whether the requirements for class certification have been met—and doing so is not … an improper evaluation of the merits of the case." (*Id*. at p. 991.)

Regarding whether substantial evidence supported the trial court's ruling, the court noted the question was not whether Dailey had presented substantial evidence supporting certification. The proper question was whether there was substantial evidence supporting the finding of the trial court that individual facts and issues requiring separate adjudication predominated over common issues. (*Dailey*, *supra*, 214 Cal.App.4th at p. 992.) On the overtime issue, "Sears presented substantial evidence … that the policies and practices identified by Dailey either do not exist, or if they do, they do not have the alleged uniform, illegal effect of requiring Managers and Assistant Managers to engage primarily in nonexempt work." (*Ibid*.) Given that evidence, the trial court acted within

its discretion in finding Dailey's theory of liability was not susceptible of common proof. (*Id*. at p. 997.)

Dailey contended Sears had no formal written policy regarding meal and rest breaks for salaried employees; he submitted declarations of several putative class members who stated they did not regularly take an uninterrupted 30-minute meal break and were not even told they were entitled to 10-minute rest breaks. (*Dailey*, *supra*, 214 Cal.App.4th at p. 1001.) They did not assert they were prohibited from taking breaks. An employer is only required to make uninterrupted, duty-free breaks available to its employees; it is not obligated to ensure that they are taken. (*Id*. at p. 1000.) There was no evidence Sears had a policy or widespread practice of depriving nonexempt employees of uninterrupted meal or rest breaks. (*Id*. at p. 1001.) Denying class treatment of the meal and rest break claims was not an abuse of discretion. (*Id*. at p. 1002.)

In *Arenas v. El Torito Restaurants, Inc.* (2010) 183 Cal.App.4th 723, another case involving allegations of misclassification of employees as exempt from the overtime laws, the plaintiffs contended the trial court relied on improper criteria and erroneous legal assumptions because it denied class certification on the ground the plaintiffs could not prove the class as a whole was misclassified. The plaintiffs asserted this was an impermissible determination on the merits. (*Id*. at p. 733.) The trial court credited the defendants' evidence that the employees' duties and time spent on individual tasks varied widely from one location to another. (*Id*. at p. 734.) Having done so, "the trial court could reasonably conclude there was insufficient evidence of widespread misclassification, hence plaintiffs' theory of recovery was not susceptible to common proof." (*Ibid*.) The trial court did not find predominance had to be established by proof the class as a whole was misclassified. Rather, it could properly conclude the required predominance was absent when there was insufficient evidence misclassification was the rule rather than the exception. (*Id*. at pp. 734–735.)

Similarly, in *Mora v. Big Lots Stores, Inc*. (2011) 194 Cal.App.4th 496, the court concluded the trial court did not use improper criteria in denying class certification, in that it did not improperly evaluate the merits of the plaintiffs' claims. (*Id*. at p. 507.) The plaintiffs contended the defendants' store managers (the putative class) were uniformly misclassified as exempt employees based solely on job title, without regard to the nature of the work they actually performed. (*Id*. at pp. 507–508.) The defendants, however, presented evidence there was no uniform corporate policy requiring the managers to engage primarily in nonmanagerial duties, and there was wide variation in the types of work performed by the store managers and the time they spent on different activities. The trial court found the defendants' evidence to be persuasive, showing that misclassification, if it occurred, was the exception and not the rule. (*Id*. at p. 508.) The defendants' evidence "'plainly and inescapably established' that Big Lots [did] not 'operate its stores or supervise its managers in a uniform and standardized manner.'" (*Id.* at pp. 508–509.)

In keeping with these cases, the trial court in this action properly considered all the evidence placed before it, and not just the allegations of plaintiffs' complaint, in determining plaintiffs failed to demonstrate common issues predominated. The evidence was conflicting.

Plaintiffs attempt to characterize defendant's alleged uniform practice as recording the employees' time according to a preset schedule, rather than according to the actual times they worked. But recording their time to a schedule does not result in any violation of the wage laws if they work in accordance with that schedule. The practices plaintiffs actually challenge are the alleged practices of requiring or permitting employees to work before the scheduled start time and after the scheduled end time without recording that time and compensating them for it, and not providing the employees their full meal and rest breaks.

Plaintiffs' evidence did not demonstrate a classwide uniform practice. Plaintiffs submitted no evidence about employees other than field workers who worked in crews in defendant's vineyards in Kern County. The proposed class, however, included an unknown number of employees who worked in other geographic areas, with other crops, or individually rather than with a crew. Plaintiffs failed to demonstrate the alleged uniform practice affected those employees.

Plaintiffs presented the declarations of twenty putative class members who worked in defendant's vineyards in Kern County, which stated that they were instructed to arrive 15 minutes early for the escuelita and were not compensated for the escuelita time. Even plaintiff Alvarado, however, acknowledged in her deposition testimony that the crew boss shouted for them to go to the escuelita at the scheduled start time. The declarations submitted by plaintiffs stated the employees performed work before their shift started and after it ended, without compensation; the declarations submitted by defendant stated the employees were not permitted to work before or after their shift, and they did not do so. The declarations submitted by plaintiffs stated the employees rarely received their full meal and rest breaks because of time spent leaving the field, washing their hands after eating, and returning to the field; defendant's evidence indicated meal and break periods did not begin until everyone was out of the field, the crew boss did not call the employees back into the fields until their full break time had passed, and the employees washed their hands during work time.

Thus, there was conflicting evidence regarding whether defendant had any uniform practice that illegally resulted in underpayment of wages to the putative class members. The evidence was such that, without abusing its discretion, the trial court could conclude plaintiffs failed to demonstrate that any underpayment of wages was a widespread practice, and was the rule rather than an exception. It could conclude that proving undercompensation would require individualized proof that particular employees worked longer hours than reflected in their time sheets or were not allowed to take their

full meal or rest breaks.  The trial court found, based on the conflicting evidence, that it could not determine there were common issues raised by any of the causes of action. Essentially, it concluded plaintiffs failed to meet their burden of demonstrating that common issues of law or fact predominated over issues requiring individualized determinations.  In reaching this conclusion, the trial court did not rely on improper criteria or erroneous legal assumptions.

### a.     First and second causes of action

Specifically addressing the first and second causes of action, seeking unpaid wages for idle time, preshift work, postshift work, and overtime, plaintiffs assert they alleged a consistent policy or practice that violated the applicable wage order (Cal. Code Regs., tit. 8, § 11140), and these causes of action were therefore suitable for class treatment.  They contend they provided the trial court with evidence of employees' preshift and postshift work.  They assert that, because defendant did not keep records of this off-the-clock time, alternative methods of proof, such as statistical sampling or canvasing of depositions could provide a common pool of evidence to prove defendant's liability.  Thus, the class should be certified.

Plaintiffs effectively contend that, because they presented substantial evidence in support of their claims, we should reverse the trial court's order and require the trial court to enter a new order certifying the class.  We cannot do so.  Under the substantial evidence standard of review, we may reverse the trial court's ruling only if it is unsupported by substantial evidence.  (*Brinker*, *supra*, 53 Cal.App.4th at p. 1022.) Plaintiffs' argument focuses not on any insufficiency in the evidence supporting the ruling the trial court made, but on whether their own evidence would satisfy the substantial evidence test.  "This misconstrues the function of this court. Our role on this appeal is narrowly confined to examining whether the trial court's ruling is supported by substantial evidence, and if it is, we may not substitute our own judgment for that of the trial court….  '[I]t is of no consequence that the trial court believing other evidence, or

31.

drawing other reasonable inferences, might have reached a contrary conclusion.'"
(*Dailey*, *supra*, 214 Cal.App.4th at p. 992.)  Plaintiffs have not demonstrated either that
substantial evidence does not support the trial court's ruling on these causes of action or
that the trial court relied on improper criteria or erroneous legal assumptions in making
the ruling.

### b.      Third and fourth causes of action

Plaintiffs make similar arguments regarding their causes of action seeking
compensation for shortened meal and rest breaks.  They contend they "provided ample
evidence of defendant's policy and widespread practice" of not allowing employees their
full breaks.  Plaintiffs have not analyzed the evidence supporting the trial court's
decision, or shown that it was not substantial.  Rather, they discuss only their own
evidence and assert it was sufficient for certification.  Again, they misconstrue our
function in reviewing the trial court's order.  Plaintiffs have failed to demonstrate there is
no substantial evidence supporting the trial court's ruling on these causes of action, just
as they failed to demonstrate the trial court based its ruling on improper criteria or
erroneous legal assumptions.

### c.      Other causes of action

Liability on the sixth, seventh, and eighth causes of action depends upon proof of
the violations alleged in the earlier causes of action.  Because the trial court found
plaintiffs failed to demonstrate common issues predominated in the earlier causes of
action, it also properly found that common issues did not predominate in these causes of
action.

The sixth cause of action alleged defendant violated the statute requiring an
employer to provide the employee with an accurate, itemized wage statement (Lab. Code,
§ 226, subd. (a)) by falsely reporting, or not reporting, the employer's address, the hours
worked, and the gross and net wages earned.  The trial court found plaintiffs failed to
show the predominance of common issues because the evidence either did not discuss the

issues raised in this cause of action, or conflicted so that common issues were not established.

Plaintiffs presented no evidence that defendant's address was absent from the wage statements it issued to its employees. Thus, the trial court correctly determined their evidence did not discuss that issue.

Regarding hours worked and wages earned, plaintiffs' theory of recovery was that, if it proved its earlier causes of action, then the wage statements defendant issued did not accurately reflect all hours worked, the rates of pay, or the total wages earned. Because the trial court found plaintiffs failed to demonstrate predominant common questions on the earlier causes of action, it also properly found they failed to demonstrate predominant common questions on the sixth cause of action.

The seventh cause of action alleged defendant failed to pay its terminated employees all wages due them promptly after termination of their employment. (Lab. Code, §§ 201–203.) Plaintiffs acknowledge that "the same evidence used to prove the wage claims and break violations" will be used to prove this cause of action and, if the earlier causes of action are certified, this one should be certified also. Likewise, they concede their eighth cause of action for violation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) is based on liability for the violations alleged in the earlier causes of action. Because the trial court found plaintiffs failed to demonstrate common issues predominated in the earlier causes of action, it also properly found they failed to demonstrate common issues predominated in the seventh and eighth causes of action.

### C. *Other requirements for class certification*

Because the lack of predominant common issues of law or fact was a sufficient basis for denial of certification of the direct employee portion of the class, we need not, and do not, address the trial court's findings that the named plaintiffs did not have claims typical of the class, that the named plaintiffs could not adequately represent the members

of the proposed class, and that a class action would not be a superior means of adjudicating the claims alleged by plaintiffs.

## ***DISPOSITION***

The order denying class certification is affirmed.  Defendant is entitled to its costs on appeal.

_____
HILL, P.J.

WE CONCUR:


_____
POOCHIGIAN, J.


_____
SMITH, J.

Filed 12/22/15

<u>**CERTIFIED FOR PUBLICATION**</u>

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| JUAN CRUZ et al., | F069719 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. S-1500-CV-271297)<br>Kern County |
| SUN WORLD INTERNATIONAL, LLC, | **ORDER GRANTING REQUEST**<br>**FOR PUBLICATION** |
| Defendant and Respondent. | |

As the nonpublished opinion filed on November 23, 2015, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.


_____
HILL, P.J.

WE CONCUR:



_____
POOCHIGIAN, J.



_____
SMITH, J.