Filed 8/13/21  Sunset Greens Homeowners Assn. v. Spagenski CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| SUNSET GREENS HOMEOWNERS ASSOCIATION, | D078201 |
| Plaintiff and Respondent, | (Super. Ct. No. 37-2019-00040082-CU-CO-CTL) |
| v. | |
| DOUGLAS SPAGENSKI et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

Law Office of Elliot Kanter and Elliot Kanter for Defendants and Appellants.

Epsten, Anne L. Rauch, Trinette S. Sachrison, and Rian W. Jones for Plaintiff and Respondent.

Homeowners, Douglas and Arden Spagenski, and their son John Spagenski (collectively, Homeowners) appeal the trial court's summary judgment in favor of Sunset Greens Homeowners Association (Association). The Association sued Homeowners after their German Shepperd, Kato,

attacked neighbors' dogs within the Association's community (the "Community"), injuring both dogs and neighbors in the attacks. The Association alleged two alternative theories for relief: breach of governing documents based on the parties' covenants, conditions, and restrictions (CC&R's) and nuisance. The Association asked the trial court to enforce the Association Board's decision to remove Kato, to permanently enjoin the Homeowners from keeping Kato within the Community, and to award attorney fees and costs.

The trial court granted the Association's motion for summary judgment after determining: (1) the Association established that the Homeowners breached the CC&R's; (2) the undisputed evidence demonstrated an aggressive dog within the Community creates a condition interfering with the comfortable enjoyment of life or property and violations of the applicable CC&R's automatically established the existence of a nuisance; and (3) the CC&R's vested the Board with the discretion to enforce the CC&R's, to declare Kato a nuisance, and to require Kato's removal from the Community. The court entered judgment for the Association and permanently enjoined Kato from living in the Community.

The Homeowners contend summary judgment was not proper because there are triable issues of material fact regarding whether Kato is an aggressive dog and whether his training has eliminated the alleged aggressive tendencies such that he should be allowed to remain within the Community. We conclude the trial court properly granted summary judgment because the Association established by undisputed material facts that the Homeowners violated the CC&R's, the violations constituted a nuisance, and the Association was entitled to a permanent injunction. Therefore, we affirm the judgment.

2

I.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *The CC&R's*

Appellants Douglas and Arden Spagenski are homeowners of residential properties within the Association's Community.  Their adult son, appellant John Spagenski, lives in one of their properties in the Community.  The Association homeowners are subject to a recorded declaration of covenants, conditions, and restrictions (CC&R's), which are equitable servitudes that may be enforced by any owner within the Community, the Association, or both.

The CC&R's provide in relevant part:

"5.17 **Offensive Activity; Nuisances.**  [Civ. Code[,] § 3479]  No one may engage in any illegal, noxious, or offensive activity in any part of the Community, or do any act which unreasonably threatens the health, safety and welfare of other residents of the Community.  Nothing shall be done on or within the Community that may be or may become a nuisance to the residents of the Community.  [¶] . . . [¶]

"5.21 **Pets.**  [Civ. Code[,] § 4715]  No one may keep pets or other animals in violation of the following:

"5.21.1  Owners or residents of the Community may keep up to two (2) usual and ordinary domestic pets on the Lot subject to the provisions of the Rules; provided, however, that no Owner or other occupant of a Lot may keep any pet which interferes with, or has a reasonable likelihood of interfering with, the rights of any Owner or other occupant of a Lot to the peaceful and quiet enjoyment of the Lot.  In the event the Board determines that any pet or other animal creates an unreasonable annoyance or nuisance to any

Owner or other occupant of a Lot, the keeping thereof shall be discontinued within a reasonable time after such determination.

"5.21.2  No pets or other animals shall be permitted in the Common Area except as specifically permitted by the Rules, and then only when on a leash held by a person capable of controlling the animal.  [¶] . . . [¶]

"13.1  ***Right to Enforce; Remedies.***  [Civ. Code[,] §§ 5850 et seq., 5900 et seq., 5925 et seq.; Corp. Code[,] § 7231]  The Association or any Owner shall have the right to enforce, by any proceeding at law or in equity, all restrictions, conditions, covenants, reservations, liens and [changes] now or hereafter imposed by the Governing Documents.  Each remedy provided in this Article, this Restated Declaration and under Applicable Law shall be considered cumulative and not exclusive.

"13.2 ***Board Discretion Whether to Enforce.***  [Corp. Code[,] § 7231] In deciding whether to take any action to enforce the restrictions, conditions, covenants, reservations, liens and changes in the Governing Documents, the Board may exercise its discretion using the business judgment rule of Corporations Code section 7231.

"13.3 ***Nuisance.***  [Civ. Code[,] § 3479]  The result of every act or omission, whereby any provision, condition, restriction, covenant, easement, or reservation contained in the Governing Documents is violated in whole or in part, is declared to be and constitute a nuisance, and every remedy allowed by Applicable Law or equity against a nuisance, either public or private, shall be applicable against every act or omission or incident resulting in a nuisance and may be exercised by any Owner and the Association.  [¶] . . . [¶]

"13.6 ***Violation of Applicable Law.***  Any violation of any Applicable Law pertaining to the ownership, occupancy or use of any Lot within the

Community is declared to be a violation of this Restated Declaration and subject to any or all of the enforcement procedures herein set forth."

B.    *Kato's First Attack and the Association's Response*

Homeowners brought Kato into the Community in August 2018 when he was three months old. In February 2019, while on a walk, Kato crossed paths with another resident and her dog, Missy. Kato picked up Missy with his mouth and shook her. Missy required stitches and antibiotics for her injuries. Kato also bit and/or scratched Missy's owner during the attack. The Humane Society put Kato in home quarantine after this incident for biting the owner's hand.[1]

After the February 2019 attack, the Association sent Homeowners a notification of violation letter and held an enforcement hearing pursuant to the Association's Rules and Regulations. In the Board's decision, it asked the Homeowners to comply with the CC&R's going forward, to ensure Kato was never off leash, to maintain control of Kato in the Community common areas, and to pay Missy's veterinary bills. The Board also notified Homeowners that "[s]hould there be any further incidents with other animals or people, the dog could be asked to leave the community."

---

[1]    There is no dispute that Kato injured Missy's owner. On summary judgment, Homeowners attempt to create a dispute around this fact through their declarations, stating the owner "did not mention any scratches or bites on her hand." But in an earlier declaration, Douglas Spagenski admitted that while Missy and her owner were in their residence immediately after Kato's attack, he noticed "a small cut" on Missy and "the scratch on [the owner's] hand." (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22 [a party may not defeat summary judgment by means of declaration testimony that contradicts their prior deposition testimony]; *Benavidez v. San Jose Police Dep't* (1999) 71 Cal.App.4th 853, 863 [the court did not abuse its discretion in disregarding a witness's summary judgment declaration testimony that was "contradictory and mutually exclusive" with their prior deposition testimony].)

C.    *Kato's Second Attack and the Association's Response*

In May 2019, Kato attacked two other dogs in the Community and injured another neighbor.  Three Community residents were walking by Homeowners' residence with their dogs Holly and Gracie.  Kato escaped through a small opening in the Homeowners' living room window.  Kato rushed at the dogs, grabbed Gracie with his mouth, and shook her violently.  One of Gracie's owners became entangled in the dogs' leashes during the fight, was knocked over by Kato, and sustained injuries.  When Gracie's other owner kicked Kato, he dropped Gracie, only to begin attacking Holly.  Kato bit Holly repeatedly.  When a third resident tried to separate Kato and Holly, Kato bit her hand.  Kato continued to chase and bite Holly until the Homeowners came out of their house, intervened, and brought Kato under control.  The Humane Society responded to the incident, took a report, and put Kato on home quarantine for another ten days.

The neighbors took Gracie and Holly to a veterinarian for their injuries.  The veterinarian treated Holly for surface bites.  She received antibiotics and recovered.  Gracie's injuries were more significant.  She underwent surgery for her injuries, but died the day after the attack.

In June 2019, counsel for the Association sent the Homeowners a letter notifying them of another enforcement hearing and directing them to remove Kato from the Community pending the hearing.  Homeowners did not attend the hearing, but in July 2019, received the Board's notice of decision.  The Board determined Kato was a "dangerous, immediate, and unreasonable infringement or threat to the health, safety or quiet enjoyment of neighboring owners within the Association" and was a nuisance.  The Board ordered Kato immediately and permanently removed from the Community.

D.    *Kato's Third Attack*

In July 2019, Kato attacked another dog, which was walking with a Community resident.  The dog's owner claimed Kato "saw [her] dog Cora and began to run aggressively towards Cora and began to attack her, biting Cora on her thigh and shaking her with his head."  Homeowners did not dispute the attack itself, but claimed it happened earlier in the year on a walking trail adjacent to the Community rather than within the Community.

E.    *The Association's Lawsuit*

In August 2019, the Association sued Homeowners, seeking injunctive relief for breach of the CC&R's and nuisance.  The trial court issued a temporary injunction enjoining Homeowners from keeping Kato within the Community during the pendency of the lawsuit.

The Association moved for summary judgment.  The Association presented evidence that its CC&R's were valid equitable servitudes, enforceable as to homeowners who purchased property in the Community through a permanent injunction.  Specifically, it contended that because of Kato's attacks on other residents and dogs within the Community, Homeowners violated Section 5.21.1.  They argued that, through the CC&R's, the Association's Board had discretion to determine a violation of Section 5.21.1, and in finding a violation, could require the removal of Kato.  Section 13.3 of the CC&R's provided a broad definition of nuisance, which included a violation of the governing documents.  The Association presented declarations from other owners who witnessed the attacks and from an insurance agent for the Association regarding the impact on the Association's insurance rate of keeping an aggressive dog within the Community.

In their opposition, Homeowners did not dispute they were subject to the CC&R's as owners of property within the Community and they raised no

7

issues regarding the validity, enforceability, or interpretation of the CC&R's. They presented no legal argument in opposition to the Association's request for summary judgment for enforcement based on breach of the CC&R's, although they disputed some of the underlying facts surrounding Kato's attacks.[2] Instead of addressing the enforcement cause of action for breach of governing documents, they argued "[t]he single issue in this case is whether Kato is a nuisance such that [the Association] can ban [Homeowners] from having Kato on the subject property." They claimed two material disputes of fact required trial on the issue of nuisance: (1) whether Kato attacked others because he was "surprised, provoked, and taunted," and (2) whether he was a future threat after undergoing training. They also claimed for the first time that Kato was an "emotional support dog."

The trial court granted the Association's motion for summary judgment. On the first cause of action for breach of the CC&R's, the court determined there was no material factual dispute that Kato attacked other dogs and individuals within the Community "on at least two separate occasions."[3] The trial court stated, "[g]iven these attacks, it was reasonable for the Association Board to conclude [Homeowners] violated provisions of the [CC&R's]." The court found "no evidence suggesting the Board's decision was made in bad faith, or [was] not consistent with the development's governing documents." Based on the undisputed facts, "the Board's decision was not

---

[2]    Namely, they alleged that the July 2019 attack took place in the spring of 2019, outside of the Community.

[3]    Because there were material factual disputes around the July 2019 attack on Cora by Kato, the trial court reached its decision considering only Kato's February and May 2019 attacks.

8

arbitrary, and application of the CC&R provisions referenced above is rationally related to legitimate health and safety concerns."

The court determined the question of whether Kato posed a threat of future harm after his training was not a triable issue of material fact on the Homeowners' breach of the CC&R's. Rather, "[t]his positive development leaves the Board with a choice between two options. The Board can address the problem by removing Kato, or address the problem by trusting [Homeowners] will not let Kato's aggressive behavior reoccur through continued training. The Board chose the former: Kato's removal. It is undisputed that this decision was made in good faith and in accordance with the CC&R's. The Board is vested with discretion, and the Court cannot override this discretion and second guess this decision."

On the nuisance cause of action, the court determined that "an aggressive dog within the development creates a condition injurious to health, and which interferes with 'the comfortable enjoyment of life or property' for homeowners within the development" under Civil Code section 3479. The court also concluded that because "violations of the applicable CC&R's have been established," the Association established that Kato was a nuisance as defined in the CC&R's, which vested the Board with the discretion to "abat[e] the nuisance."

## II.
## DISCUSSION

A. *Standard of Review on Summary Judgment*

Our review of the trial court's decision is de novo. (*Swigart v. Bruno* (2017) 13 Cal.App.5th 529, 536.) " ' "[W]e assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment." ' [Citation.]" (*Ibid.*)

9

"[W]e are not bound by the trial court's stated reasons for its ruling on the motion; we review only the trial court's ruling and not its rationale." (*Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1402.) Nevertheless, we presume the trial court's judgment is correct and it is appellants' burden to demonstrate error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Arnold v. Dignity Health* (2020) 53 Cal.App.5th 412, 423.) Summary judgment is properly granted if the record demonstrates there is no triable issue of material fact such that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

The pleadings determine the issues to be addressed. (*City of Morgan Hill v. Brown* (1999) 71 Cal.App.4th 1114, 1121.) A plaintiff moving for summary judgment "bears the burden of persuasion that 'each element of' the 'cause of action' in question has been 'proved,' and hence that 'there is no defense' thereto." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) When a plaintiff has met the initial burden of showing that each element has been proved, "the burden shifts to the defendant . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(1).)

" 'The defendant . . . may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' " (*Aguilar, supra*, 25 Cal.4th at p. 849, citing Code Civ. Proc., § 437c, subd. (o)(1).) "[M]ere speculation and conjecture" are not enough. (*LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 981; *Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 525 (*Brown*) [" 'An issue of fact can only be

created by a conflict of evidence.  It is not created by "speculation, conjecture, imagination or guess work."  [Citation.]' "].)

B.      *No Triable Issues of Material Fact on Homeowners' Breach of CC&R's*

Homeowners generally contend "[t]here is much dispute between" the parties about what happened during Kato's attacks.[4]  They also argue that "[t]he trier of fact . . . needs to decide whether or not Kato's training eliminated any alleged aggressive tendencies so that Kato can remain within the association."[5]  We are not persuaded.

The Association claims the Homeowners violated Section 5.21.1 of the CC&R's, which states, "no Owner or other occupant of a Lot may keep any pet which interferes with, or has a reasonable likelihood of interfering with, the rights of any Owner or other occupant of a Lot to the peaceful and quiet enjoyment of the Lot."  The Association established, through undisputed

---

[4]      The Homeowners' opening brief summarily states there are disputes about how Kato's attacks occurred and whether he was provoked.  But they do not provide record references for any such material factual disputes. (*Jumaane v. City of Los Angeles* (2015) 241 Cal.App.4th 1390, 1406 ["The court is not required to make an independent search of the record and may disregard any claims when no reference is furnished"]; *In re S.C.* (2006) 138 Cal.App.4th 396, 406-407 ["[A]n appellate court need not search through the record in an effort to discover the point purportedly made[,]" but may "simply deem the contention to lack foundation and, thus, to be forfeited. [Citations.]"].)

[5]      Homeowners do not challenge the trial court's decision rejecting their argument that Kato was an emotional support dog.  Noting that the lawsuit did not include "an action for disability discrimination," the trial court concluded that the Homeowners were not prohibited from owning *a* support dog, only *this* "single, specific dog that has proved to be overly aggressive and dangerous."  Having failed to dispute this ruling, they have abandoned it on appeal.  (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [if a party fails to provide legal argument and citations to authority on a point, " 'the court may treat it as waived, and pass it without consideration' "].)

11

evidence, that the CC&R's are valid and binding on Homeowners. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 241 (*Pinnacle*) ["There appears no question that, under the Davis-Stirling Act, each owner of a condominium unit either has expressly consented or is deemed by law to have agreed to the terms in a recorded declaration"].) Homeowners agree they are subject to the CC&R's. A validly enacted restriction is binding on homeowners "unless the restriction is arbitrary, imposes burdens on the use of lands it affects that substantially outweigh the restriction's benefits to the development's residents, or violates a fundamental public policy." (*Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 386 (*Nahrstedt*); see also Civ. Code, § 5975, subd. (a) ["The covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable . . . ."].) Homeowners raised no issue with the enforceability of the CC&R's.

To establish a breach of section 5.21.1 of the CC&R's, the Association relied on evidence that Kato attacked other dogs within the Community at least twice and injured other residents during these attacks.

In the first incident, Kato picked up Missy with his mouth and shook her. She required stitches and antibiotics to heal. Kato also bit and/or scratched Missy's owner's hand when the owner tried to intervene and separate the animals. In an earlier declaration, Doug Spagenski conceded Missy and the owner had cuts after the incident.

In the second incident, witnesses declared that Kato rushed at two other dogs, Holly and Gracie, grabbing each with his mouth and shaking them violently. Holly sustained surface bites, but Gracie died from her injuries. Kato knocked one of the owners over and bit another's hand. These

undisputed facts sufficiently show Homeowners, through Kato, interfered with other residents' "peaceful and quiet enjoyment" of the Community.

Homeowners surmise that Kato may have been provoked during the second incident. However, they failed to produce any evidence to support their speculation that Kato was provoked on this occasion. (*Brown, supra*, 171 Cal.App.4th at p. 525.) Because the Homeowners did not witness the beginning of Kato's attack of Holly and Gracie, they cannot raise a material factual dispute as to what occurred during the attack before they arrived on the scene. Even assuming they could raise a dispute as to what occurred, this would be a question of fact for the Board, not a jury. Section 5.21.1 of the CC&R's, provides that the Association Board is vested with the discretion to determine whether a pet "create[d] an unreasonable annoyance or nuisance to any Owner or other occupant of a Lot." There is no dispute that the Board exercised that discretion and determined Homeowners violated Section 5.21.1.

Homeowners also contend that given Kato's subsequent training, there is a dispute as to his future aggressive tendencies; but this question is simply not material under the CC&R's. Section 5.21.1 of the CC&R's provides "that no Owner or other occupant of a Lot may keep any pet which interferes with, or has a reasonable likelihood of interfering with," other residents. We construe the use of the word "or" in Section 5.21.1 in its ordinary meaning. (Civ. Code, § 1644; *Houge v. Ford* (1955) 44 Cal.2d 706, 712 ["In its ordinary sense, the function of the word 'or' is to mark an alternative such as ' "either this or that" ' [Citations.]"].) Homeowners violated Section 5.21.1 because Kato has interfered with other residents' enjoyment within the Community. The Association Board did not need to also find Kato has a "reasonable likelihood of interfering with" other residents in the future. Section 13.2 of

13

the CC&R's also expressly grants the Board discretion to enforce a violation of the CC&R's, which it did. The CC&R's—including, but not limited to, sections 5.21.1 and 13.3—do not require the Board to consider abatement or the likelihood of future harm in determining whether a breach occurred or in exercising its discretion to enforce the CC&R's.

Accordingly, we conclude the Association carried its burden and established a breach of the CC&R's. Once the burden shifted under summary judgment, Homeowners failed to show a material dispute of fact or defense to their breach. Section 5.21.1 of the CC&R's mandates, "In the event the Board determines that any pet . . . creates an unreasonable annoyance or nuisance to any Owner or other occupant of a Lot, the keeping thereof shall be discontinued within a reasonable time after such determination." Because the Homeowners did not comply with the Board's direction to remove Kato, sections 13.1 and 13.3 provide that the Association was entitled to seek enforcement of the CC&R's.

Therefore, we conclude the court properly granted summary judgment as to the Association's breach of governing documents (enforcement) claim.

C.      *No Triable Issues of Material Fact on Nuisance Claim*

On the nuisance claim, Homeowners again contend there are disputed material facts as to "whether or not Kato was provoked" or "aggressive," and as to "whether or not Kato's training eliminated any alleged aggressive tendencies."

1.      *The Association Established Kato Was a Nuisance*

The Association argued Kato was a nuisance under Civil Code section 3479 and the CC&R's.

Civil Code section 3479 defines a nuisance, in part, as "an obstruction to the free use of property, so as to interfere with the comfortable enjoyment

14

of life or property . . . ." The statute "requires some sort of conduct, i.e. intentional and unreasonable, reckless, negligent, or ultrahazardous, that unreasonably interferes with another's use and enjoyment of his property." (*Lussier v. San Lorenzo Valley Water Dist.* (1988) 206 Cal.App.3d 92, 102; Rest.2d Torts, § 822, com. a ["The invasion may be intentional and unreasonable. It may be unintentional but caused by negligent or reckless conduct; or it may result from an abnormally dangerous activity for which there is strict liability."]; Rest.2d Torts, § 822, com. j ["a dog known by the owner to be vicious may create a private nuisance when it interferes with the use or enjoyment of the land next door, and the owner may be subject to strict liability because of his knowledge of the dog's propensities."].) The interference must be substantial, such that a reasonable person would be disturbed by the condition. (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 937-938 ["[T]he standard is objective: the question is not whether the particular plaintiff found the invasion unreasonable, but 'whether reasonable persons generally, looking at the whole situation impartially and objectively, would consider it unreasonable.' "], citing Rest.2d Torts, § 826, com. c, p. 121.)

The CC&R's define a "nuisance" as "[t]he result of every act or omission, whereby any provision, condition, restriction, covenant, easement, or reservation contained in the Governing Documents is violated in whole or in part . . . ." Through the CC&R's, the Association Board is vested with discretion to determine a violation of the CC&R's, and thus, to determine whether a homeowner created a nuisance. (*Pinnacle*, *supra*, 55 Cal.4th at p. 241.)

The Association satisfied its burden on summary judgment and established that Kato unreasonably and substantially interfered with the

15

Association members' comfortable enjoyment of property under Civil Code section 3479. The uncontroverted and undisputed evidence the Association produced through witness declarations established that Kato attacked dogs and injured other residents on two separate occasions. Homeowners offered no evidence that Kato was provoked during either attack. Rather, the undisputed evidence established that Kato was the aggressor. The harm he created—killing Gracie, injuring Holly and Missy, and injuring other residents—was objectively substantial and unreasonable.

Kato's attacks violated Section 5.21.1 of the CC&R's. The Association's Board had the discretion to, and did, find Kato to be a nuisance as defined by Section 13.3 of the CC&R's.

2.      *The Association is Entitled to a Permanent Injunction*

Both California law and the CC&R's provide for injunctive relief to abate a nuisance. (Civ. Code, § 3501; Code Civ. Proc., § 526; *Posey v. Leavitt* (1991) 229 Cal.App.3d 1236, 1243.) But unlike a statutory claim where the Association would have to establish a justification for a permanent injunction (Code Civ. Proc., § 526, subd. (a)(1)–(7)), the Association does not need to establish a likelihood of future harm to obtain a permanent injunction under the CC&R's.[6]

Section 5.21.1 of the CC&R's states, "[i]n the event the Board determines that any pet or other animal creates an unreasonable annoyance

---

6      To permanently enjoin Kato as a nuisance solely under California law, the risk of future harm would be a question of disputed fact. (*In re Firearm Cases* (2005) 126 Cal.App.4th 959, 988, citing Rest.2d Torts, § 821F, com. b, p. 105 [" '[A] public or a private nuisance may be enjoined because harm is threatened that would be significant if it occurred . . . .' "]; see also *Christensen v. Tucker* (1952) 114 Cal.App.2d 554, 562-563 [trier of fact has discretion in determining whether to grant injunction and may weigh the relative hardships].)

or nuisance to any Owner or other occupant of a lot, the keeping thereof *shall be discontinued* within a reasonable time after such determination." This is an enforceable restrictive covenant against the Homeowners. (*Nahrstedt, supra*, 8 Cal.4th at p. 368.) Because the Homeowners did not voluntarily comply, the Association sought enforcement of its decision to remove Kato. Section 13.3 of the CC&R's provides that "every remedy allowed by Applicable Law or equity against a nuisance, either public or private, shall be applicable against every act or omission or incident resulting in a nuisance and may be exercised by any Owner and the Association." Homeowners failed to raise and have thus forfeited any argument that the CC&R's were unreasonable or unfairly applied to them.

The Association is thus entitled to enforce the remedy agreed to by the parties in the CC&R's through a permanent injunction prohibiting Homeowners from keeping Kato within the Community. Accordingly, we affirm summary judgment for the Association.

D.    *The Association is Entitled to Appellate Attorney Fees*

In its reply brief, the Association correctly contends if it prevails in this appeal, it is entitled to recover its appellate attorney fees. " 'A statute authorizing an attorney fee award at the trial court level includes appellate attorney fees unless the statute specifically provides otherwise.' [Citation.]" (*Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 265 (*Rancho Mirage*).)  Civil Code section 5975, subdivision (c) provides, "[i]n an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." "Neither [Civil Code] section 5975, nor any other provision of the Davis-Stirling Act, precludes recovery of appellate attorney fees by a prevailing party; hence they are recoverable." (*Rancho Mirage*, at p. 265.)

### III.

### DISPOSITION

The judgment is affirmed.  The Association shall recover its costs and attorney fees on appeal.


IRION, J.

WE CONCUR:



McCONNELL, P. J.



GUERRERO, J.